[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 4, 2006
THOMAS K. KAHN
CLERK

_____

No.  04-14776

_____

D.C. Docket No. 01-10009-CR-JLK


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

STEVEN GIBSON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 4, 2006)**

Before TJOFLAT and BARKETT, Circuit Judges, and MILLS*, District Judge.

_____

* Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

TJOFLAT, Circuit Judge:

In this appeal, the United States challenges the decision of the District Court for the Southern District of Florida not to designate Steven Gibson a career offender pursuant to section 4B1.1 of the U.S. Sentencing Guidelines.[1] The district court concluded that under Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), it could not classify Gibson as a career offender because the Government did not prove to a jury the nature of Gibson's prior convictions (i.e., that those prior convictions were felonies involving controlled substances) or the fact that Gibson was at least 18 years old at the time he committed the offense in this case. We conclude that the Supreme Court's decision in Blakely, and its subsequent decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), did not prevent the district

---

[1] Hereinafter, we cite to the Sentencing Guidelines as "U.S.S.G." Unless otherwise specified, we rely on the versions of the criminal statutes and Sentencing Guidelines in effect at the time the district court made its sentencing decisions. "We apply the version of the Sentencing Guidelines and commentary in effect on the date of sentencing . . . unless a more lenient punishment would result under the Guidelines version in effect on the date the offense was committed." United States v. Simon, 168 F.3d 1271, 1272 (11th Cir. 1999) (citations omitted). Accordingly, we will refer to the 2002 version of the Sentencing Guidelines when discussing Gibson's original sentence (imposed on December 6, 2002), the 2003 version when discussing the sentence that is the subject of this appeal (imposed on August 13, 2004), and the 2005 version when discussing the sentencing range that the district court should consider on remand. The 2000 version of the Sentencing Guidelines, which was in effect at the time Gibson committed the instant offense of conviction, imposes the same sanctions as the 2002, 2003 and 2005 versions.

court from considering Gibson's prior convictions, determining his age at the time he committed the instant offense, and designating him a career offender. Even though the Sentencing Guidelines are now advisory, the district court had an obligation correctly to interpret and consult them. It failed to do so by disregarding Gibson's prior convictions. Accordingly, we vacate Gibson's sentence and remand his case to the district court for re-sentencing.

Part I of this opinion describes the facts of Gibson's arrest and the sentencing proceedings in the district court that led to this appeal. In Part II, we review the district court's holding that it could not classify Gibson as a career offender under U.S.S.G. § 4B1.1. In Part III, we provide guidance on how the district court, on remand, should determine Gibson's sentence. In Part IV, we conclude our discussion.

## I.

On February 22, 2001, two officers of the Monroe County, Florida Sheriff's Department were conducting surveillance from an unmarked vehicle on U.S. Highway 1 in the Florida Keys. Based on an informant's tip, the officers were instructed to "be on the lookout" for a vehicle occupied by Gibson and his cousin, who were believed to be transporting narcotics. During the surveillance the officers observed a vehicle with a low-hanging muffler commit several traffic

3

violations, including two lane changes without the proper use of turn signals and driving in excess of the speed limit.

The officers stopped the vehicle. The driver, Edward Brown, stepped out, leaving Gibson in the front passenger seat. Another officer from the Monroe County Sheriff's office, Detective Gene Thompson, arrived on the scene while one of the officers checked Brown's drivers license. Gibson asked one of the officers whether he could speak with Detective Thompson. While still seated in the vehicle, Gibson informed Detective Thompson that he was in possession of $1100, and that he "would like to hang on to his money." When Detective Thompson asked Gibson why he was concerned about retaining possession of the money, Gibson replied that he had "some powder in his pocket." At Detective Thompson's request, Gibson repeated this statement in front of one of the other officers.

After receiving verbal permission from Gibson, Detective Thompson retrieved from Gibson's pocket nine bags of white powder, which a field test determined to be cocaine. Detective Thompson then placed Gibson under arrest. According to the Government, Gibson waived his Miranda[2] rights and directed the officers to two half "cookies" of crack cocaine, near where Gibson had been

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

seated in the vehicle. After obtaining Gibson's oral and written consent to search the vehicle, the officers retrieved 22.6 grams of powder cocaine and 4.6 grams of crack cocaine.

A.

On March 7, 2001, Gibson was indicted on one count for possessing with intent to distribute five grams or more of cocaine base ("crack cocaine"), having previously been convicted of a felony drug offense, in violation of 21 U.S.C. § 841(a)(1).[3] Prior to trial, the Government filed with the district court and served on Gibson a second offender information, requesting a sentence enhancement pursuant to 21 U.S.C. § 851(a).[4] The information listed six of Gibson's previous drug-related felony convictions under Florida law.[5] Based on these prior

---

[3] Pursuant to 21 U.S.C. § 841(a)(1), it is unlawful for any person knowingly or intentionally "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance." 21 U.S.C. § 841(a)(1) (2002).

[4] "No person who stands convicted of an offense . . . shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1) (2002).

[5] Gibson previously was convicted six times under Florida Statute § 893.13 for the sale of cocaine. Under the current codification of this provision "it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. Ann. § 893.13(1)(a) (West 2005). Cocaine is such a controlled substance. Fla. Stat. Ann. § 893.03(2)(a)(4) (West 2005). Florida classifies this offense as a second-degree felony, Fla. Stat. Ann. § 893.13(1)(a)(1) (West 2005), which is punishable by a prison term "not exceeding 15 years." Fla. Stat. Ann. § 775.082(3)(c) (West 2005).

convictions, 21 U.S.C. § 841(b)(1)(B) increased the statutory minimum sentence to which Gibson was subject from five years to ten years, and increased his statutory maximum sentence from forty years to life imprisonment.[6]

After the district court denied Gibson's motion to suppress evidence,[7] a two-day trial was conducted on September 6 and 7, 2001. The jury returned a guilty verdict against Gibson, finding beyond a reasonable doubt that "the cocaine base weighed more than five grams," and that Gibson was "previously convicted of a felony, that is, a crime punishable by a term of imprisonment exceeding one year."

The United States probation officer assigned to Gibson's case prepared a presentence investigation report ("PSI") which summarized Gibson's criminal record. Based on this record, the PSI calculated Gibson's base offense level to be

---

[6] Pursuant to 21 U.S.C. § 841(b), any person who violates 21 U.S.C. § 841(a), and such violation involves, inter alia, "5 grams or more of a mixture or substance . . . which contains cocaine base," will be sentenced to a term of imprisonment not "less than 5 years and not more than 40 years." 21 U.S.C. § 841(b) & (b)(1)(B)(iii) (2002).

[7] Gibson challenged the admission into evidence of his incriminating statements to Detective Thompson on two grounds. First, Gibson argued that an objective view of the facts did not warrant the stop of the vehicle, Gibson's detention, or the subsequent search of the vehicle. Second, Gibson asserted that the officers who stopped his vehicle lacked probable cause to do so, and in fact were simply seeking an opportunity to investigate Gibson's potential narcotics involvement. Accordingly, Gibson asserted that he should have been apprised of his rights earlier, and as he was not, his statements should have been suppressed. The district court accepted the report and recommendation of the magistrate judge and rejected Gibson's claims.

28 pursuant to U.S.S.G. § 2D1.1(c)(6),[8] and his criminal history points to be 18

pursuant to U.S.S.G. § 4A1.1.  Gibson's 18 criminal history points gave him a

Criminal History Category of VI.[9]  Finally, the PSI stated that Gibson is a career

offender pursuant to U.S.S.G. § 4B1.1 because he has at least two prior felony

drug convictions and he was at least 18 years old at the time he committed the

instant offense.[10]  With the career offender enhancement, Gibson's base offense

level was 37 and his Criminal History Category VI, with a corresponding

sentencing range of 360 months to life imprisonment.

In Gibson's objections to the PSI filed with the district court, he did not

contest the PSI's summary of his criminal record, nor did he challenge its

calculation of his criminal history points.  Rather, he requested a downward

---

[8]  Section 2D1.1(c) of the Sentencing Guidelines (the "Drug Quantity Table") assigns a base offense level for convictions involving a controlled substance according "to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1 n. A (2002).  The PSI stated that Gibson's base offense level was 28 based on proof offered at trial that Gibson's offense involved 22.6 grams of cocaine base.  See U.S.S.G. § 2D1.1(c)(6) (2002).

[9]  "The total criminal history points from § 4A1.1 determine the criminal history category (I-VI) in the sentencing Table in Chapter 5, Part A."  U.S.S.G. § 4A1.1 cmt. (2002).  A defendant must have 13 criminal history points or more in order to be assigned a Criminal History Category of VI.  U.S.S.G. ch. 5, pt. A (sentencing table) (2002).

[10]  A criminal defendant is a career offender under section 4B1.1 of the U.S. Sentencing Guidelines if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (2002).

7

departure on two grounds. First he contended that, pursuant to U.S.S.G. § 4A1.3, a Criminal History Category of VI overrepresented the seriousness of his criminal record.[11] Second, he asserted that, pursuant to U.S.S.G. § 5K2.0,[12] the sentencing guidelines range of 360 months to life imprisonment was disproportionate to the offense of his conviction, which involved less than 23 grams of cocaine base.[13]

Gibson asked the district court to consider two alternative sentences, neither of which would classify him as a career offender. First, Gibson asked the court to apply the Sentencing Guidelines without regard to the U.S.S.G. § 4B1.1 career offender enhancement, which would have reduced his offense level to 28, Criminal History Category VI, with a corresponding sentencing range of 140 to 175 months. Alternatively, Gibson requested that the court sentence him without

---

[11] "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1) (2002).

[12] A court may grant a downward departure under U.S.S.G. § 5K2.0 when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines different from that described." U.S.S.G. § 5K2.0 (2002).

[13] In his objections to the PSI, Gibson conceded that "he was convicted of possession with intent to distribute 22.6 grams of crack cocaine," and that his offense involved "his possession of 22.6 grams of crack cocaine." Nevertheless, Gibson on appeal contends that the jury never returned a verdict reflecting this specific amount, only that his offense "involved five grams or more of crack cocaine." As we discuss in section III.A., infra, Gibson's sentence under the Sentencing Guidelines is driven not by the quantity of cocaine base involved in his instant offense, but by his prior convictions.

regard to the 21 U.S.C. § 851 statutory multiple offender enhancement, which would have reduced his base offense level to 34, Criminal History Category VI, with a corresponding sentencing range of 262 to 327 months.

At Gibson's sentencing on December 6, 2002, the district court concluded that "the criminal history envisioned by the sentencing guidelines commission is excessive, and applying it in this case does over represent [sic] the defendant's criminal past." Over the Government's objections, the district court departed downward along the vertical axis of the Sentencing Table, from the base offense level of 37 indicated in the PSI to 28, Criminal History Category VI, and sentenced Gibson to 140 months imprisonment to run concurrently with state sentences Gibson had already been serving.[14] The Government appealed Gibson's sentence to this court. Gibson cross-appealed, challenging the district court's denial of his motion to suppress.

On direct appeal, the Government challenged the district court's downward departure based on overrepresentation. The Government also argued that the

---

[14] The court also sentenced Gibson to three years of supervised release, ordered him to pay a $100 assessment, and to participate in a drug treatment program. The Government did not object to the district court's basis for departing downward along the vertical axis at the time of Gibson's sentencing. Rather, the Government first urged the court to sentence Gibson at the top end of the 140 to 175 month range so that his sentence would "more approach what the guidelines require," and then preserved its objection to the downward departure without elaboration.

district court erred in the manner in which it implemented the departure. We affirmed Gibson's conviction and vacated his sentence, remanding the case to the district court for re-sentencing. United States v. Gibson, No. 03-10249, slip op. at 2 (11th Cir. Jan. 29, 2004). We directed the court to proceed along the horizontal axis of the Sentencing Table and discuss each criminal history category en route to the category that most appropriately reflected Gibson's criminal history, in accordance with our decision in United States v. Smith, 289 F.3d 696, 711 (11th Cir. 2002).

B.

Prior to Gibson's re-sentencing, the Supreme Court decided Blakely, in which it held that the State of Washington's mandatory sentencing guidelines system violated the Sixth Amendment by imposing sentence enhancements based on facts neither admitted by the defendant nor found by a jury.

At Gibson's re-sentencing hearing on July 8, 2004, the Government contended that Blakely did not apply to the Sentencing Guidelines, and therefore had no bearing on whether Gibson could be classified as a career offender based on his prior felony convictions. The Government also asserted that the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), required the same conclusion. In Almendarez-

Torres the Court held that, for sentencing purposes, the fact of a defendant's prior convictions did not need to be charged in an indictment. Id. at 226-27, 118 S. Ct. at 1222. Based on this decision, the Government urged the court to sentence Gibson pursuant to the 360 months to life imprisonment sentencing range.

Gibson countered that it would be unconstitutional under Blakely to impose on him U.S.S.G. § 4B1.1 career offender enhancements based on facts that were neither alleged in an indictment nor found by the jury. Gibson conceded that, under Almendarez-Torres, the district court could make the factual finding that he had prior convictions without violating Blakely. However, Gibson argued that Almendarez-Torres only permitted the court to find the fact of his prior convictions, which would not be sufficient to enhance his sentence under U.S.S.G. § 4B1.1. Rather, he claimed that his classification as a career offender depended on the nature of those prior convictions (i.e., whether his prior convictions were for drug-related felonies). Given that the jury was never asked to determine the nature of his prior convictions, Gibson argued that the court could not consider him a career offender for sentencing purposes. Gibson also argued that the Government was required to but failed to secure a jury finding that he was at least 18 years old at the time he committed the instant offense. The court requested further briefing on the issue, and held another hearing.

11

On August 13, 2004, the court issued a Sentencing Order on Remand ("Sentencing Order"). Based on its interpretation of Almendarez-Torres and Blakely, the court concluded that the nature of Gibson's prior convictions, his age at the time he committed the instant offense, and the nature of the instant offense had to be proven to a jury before Gibson could be designated a career offender under U.S.S.G. § 4B1.1. Emphasizing that the Government had not submitted these questions to the jury or proved them beyond a reasonable doubt, the court refused to apply the career offender enhancement to Gibson's sentence. The court then calculated Gibson's base offense level to be 26, based on the jury's finding that the instant offense involved 5 or more grams of cocaine base. Noting that Gibson's Criminal History Category of VI was uncontested, the court sentenced him to 140 months imprisonment.[15] Alternatively, the court held that if it is later sufficiently proved that Gibson's instant offense involved 22.6 grams of cocaine base (a fact that was not specifically determined by the jury),[16] Gibson's offense

---

[15] Under the Sentencing Guidelines, a base offense level of 26, Criminal History Category VI yields a sentencing range of 120 to 150 months imprisonment.

[16] The court did not indicate where, or in what proceeding, the Government might prove such drug quantity.

12

level would increase to 28, his Criminal History Category would remain at VI, and his sentence would remain 140 months imprisonment.[17]

C.

The Government appeals, and asks us to vacate Gibson's sentence.[18] The Government asserts that, contrary to the district court's holding, Blakely did not require that Gibson's prior convictions be proven to a jury beyond a reasonable doubt before the court could enhance his sentence under the U.S.S.G. § 4B1.1 career offender provision. After the Government submitted its opening brief in this appeal, the Supreme Court decided Booker. In Booker, the Court held that the Federal Sentencing Guidelines, as a mandatory guidelines system, violated the Sixth Amendment right to a trial by jury by enhancing a defendant's sentence based on judicially-found facts. Booker, 125 S. Ct. at 756. The Court held that, henceforth, the Sentencing Guidelines are advisory.

Gibson argues that his sentence should be affirmed because the district court correctly refused to enhance his sentence based on facts that were not found by the jury. Moreover, Gibson contends that Booker strengthens his position by making

---

[17] A base offense level of 28, Criminal History Category VI yields a sentencing range of 140 to 175 months imprisonment.

[18] We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

13

the Sentencing Guidelines, including the U.S.S.G. § 4B1.1 career offender enhancements, merely advisory.

In light of Booker, the Government now concedes that the Sentencing Guidelines are merely advisory. However, the Government believes that Booker left in place the exception in Almendarez-Torres that allowed the district court to find that Gibson was convicted of at least two drug-related felonies prior to his instant offense, and to designate him a career offender.

For the reasons stated below, we hold that the district court erred by refusing to consider Gibson's prior felony convictions when determining his sentence.

**II.**

We review de novo the district court's interpretation and application of the Sentencing Guidelines. United States v. Smith, 54 F.3d 690, 691 (11th Cir. 1995); United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (quoting United States v. Bush, 126 F.3d 1298, 1299 (11th Cir. 1997)). Moreover, the district court's decision to classify a defendant as a career offender pursuant to U.S.S.G. § 4B1.1 is a question of law that we also review de novo. United States v. Himick, 139 Fed. Appx. 227, 230 (11th Cir. 2005); United States v. Farris, 77 F.3d 391, 397 (11th Cir. 1996); see also United States v. Kelly, 422 F.3d 889, 891-92 (9th

14

Cir. 2005); United States v. Rice, 110 Fed. Appx. 855, 857 (10th Cir. 2005). The Supreme Court's decision in Booker did not alter the standard by which we review the district court's interpretation and application of the Sentencing Guidelines, only the standard by which we review the district court's sentence. Crawford, 407 F.3d at 1178 (stating that "Booker established a 'reasonableness' standard for final sentences imposed on a defendant" but "that Booker does not alter our review of the application of the Guidelines").

Although the district courts are no longer required to apply the range dictated by the Sentencing Guidelines, they are still obligated to "consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767. Implied in this obligation is the responsibility to "calculate correctly the sentencing range prescribed by the Guidelines." Crawford, 407 F.3d at 1178 (emphasis in original). "A misinterpretation of the Guidelines by the district court 'effectively means that [the district court] has not properly consulted the Guidelines.'" Id. (quoting United States v. Hazelwood, 398 F.3d 792, 801 (6th Cir. 2005)).

In re-sentencing Gibson to 140 months imprisonment, the district court made two errors of law. First, the court misinterpreted the Supreme Court's decisions in Almendarez-Torres, Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct.

15

2348, 147 L. Ed. 2d 435 (2000), and Blakely. Second, the court misapplied the Sentencing Guidelines by miscalculating Gibson's base offense level and his Criminal History Category. We address each error in turn.

A.

In its Sentencing Order, the district court concluded that it lacked the constitutional authority to make a judicial finding of Gibson's prior felony convictions. The court held that, under the Supreme Court's decision in Blakely, the Fifth and Sixth Amendments required an indictment to allege all facts supporting a criminal defendant's sentence, and the Government to prove those facts to a jury beyond a reasonable doubt. As the Government in the instant case had done neither, the court concluded that the facts needed to designate Gibson a career offender under U.S.S.G. § 4B1.1 were lacking.

The district court did, however, acknowledge that the Supreme Court's decision in Almendarez-Torres, which preceded Blakely, explicitly excepted a defendant's prior convictions from the indictment and proof requirements of the Fifth and Sixth Amendments. Nevertheless, the court implied that it was not bound by Almendarez-Torres because the subsequent criticism of that case by the Supreme Court undermined its continuing viability or, at the very least, narrowly limited it to its unique facts.

16

In Almendarez-Torres, the Court considered petitioner's Fifth Amendment and Sixth Amendment challenges to the enhancement of his sentence under a federal statute, based on a prior conviction for an aggravated felony.[19] Almendarez-Torres contended that the fact of his prior conviction was an element of his instant offense, not merely a factor to be considered for sentencing purposes, because that prior conviction increased the statutory term of imprisonment to which he otherwise was subject. Since the indictment did not allege this prior conviction, Almendarez-Torres argued that the Government had violated his Fifth Amendment rights to have all elements of the charges against him presented to a grand jury and to have all of those elements proven beyond a reasonable doubt, and his Sixth Amendment right to be informed of the nature of the accusations against him. Brief of Petitioner at 30, Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).

The Court ruled that an indictment need not charge a sentence-enhancing factor if Congress did not intend that factor to be an element of the charged offense. Almendarez-Torres, 523 U.S. at 228, 118 S. Ct. at 1223. The Court

---

[19] Almendarez-Torres was convicted under 8 U.S.C. § 1326, which forbids an alien who once was deported to return to the United States without special permission, and authorizes a prison term of up to, but no more than, two years. Almendarez-Torres, 523 U.S. at 226, 118 S. Ct. at 1222. Under § 1326(b)(2), that penalty may be increased to twenty years if the initial deportation was subsequent to a conviction for commission of an aggravated felony. Id.

explained that "the prior conviction of an aggravated felony" in Almendarez-Torres' case did not "need [to] be 'proved' . . . in order to prove the commission of the relevant crime." Id. at 241, 118 S. Ct. at 1229. The relevant statutory language, structure, subject matter, context and history expressed Congress' intent to treat prior convictions as sentencing factors only. See id. at 228-35, 118 S. Ct. 1223-26. The Court further noted that the prior commission of an aggravated felony "involved one of the most frequently found factors that affects sentencing – recidivism," describing it as "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." Id. at 243, 118 S. Ct. at 1230.

The Court has since questioned the prior-conviction exception set forth in Almendarez-Torres. In Apprendi, the Court considered the constitutionality of New Jersey's "hate crime" statute, under which a defendant's sentence could be enhanced if the court found, by a preponderance of the evidence, that the defendant committed the underlying crime for the purpose of intimidating members of certain protected groups.[20] Apprendi, 530 U.S. at 468-69, 120 S. Ct.

---

[20] The New Jersey statute provided for an "extended term" of imprisonment if "[t]he defendant in committing the crime [of conviction] acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. § 2C:44-3(e) (West Supp. 1999-2000). Thus, unlike Almendarez-Torres, the question the Court was charged with answering did not involve the defendant's recidivism.

at 2351.  The Court found the law unconstitutional because the Fourteenth Amendment Due Process Clause and the Sixth Amendment notice and jury trial guarantees require that facts that increase the maximum penalty for a crime be charged in an indictment and proved to a jury beyond a reasonable doubt.[21]  Id. at 490, 120 S. Ct. at 2362-63.

Commenting in dicta on its previous decision in Almendarez-Torres, the Court conceded that "it is arguable that Almendarez-Torres was incorrectly decided," and further indicated that Almendarez-Torres could be overruled in a future case given "a logical application of our reasoning today."  Id. at 489, 120 S. Ct. at 2362.  Nevertheless, the Court explicitly declined to overrule Almendarez-Torres because "Apprendi [did] not contest [that] decision's validity."  Id. at 490, 120 S. Ct. at 2362.  The Court decided instead to "treat [Almendarez-Torres] as a narrow exception."  Id.  The Court thus restated the rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. (emphasis added).

_____

[21]  The Fourteenth Amendment makes the Fifth Amendment and the Sixth Amendment binding on the states.  Apprendi, 530 U.S. at 476, 120 S. Ct. at 2355.

The Court then decided <u>Blakely</u>, and similarly left the constitutional exception for prior convictions undisturbed.  In <u>Blakely</u>, the Court reviewed the enhancement of the petitioner's sentence above the statutory maximum based on facts found by the court and not by the jury.[22]  <u>Blakely</u>, 542 U.S. at 298, 124 S. Ct. at 2534.  Blakely pled guilty to the elements of second-degree kidnaping involving domestic violence and use of a firearm, but did not plead any other facts relevant to his offense of conviction.  <u>Id.</u> at 298-99, 124 S. Ct. at 2534-35.  The facts to which Blakely pled guilty, standing alone, supported a statutory maximum sentence of 53 months imprisonment, which is the sentence the State recommended.  <u>Id.</u> at 300, 124 S. Ct. at 2535.  After hearing testimony regarding the manner in which Blakely committed the offense, the court concluded that he acted with "deliberate cruelty," a ground for which, in domestic violence cases, the State of Washington statutorily permitted sentencing courts to increase a defendant's sentence above the statutory maximum.  <u>Id</u>. at 300-01, 124 S. Ct. at 2535-36.  Over Blakely's objection, the court sentenced him to 90 months imprisonment.  <u>Id.</u> at 300, 124 S. Ct. 2535-36.  Relying on the rule set forth in <u>Apprendi</u>, the Court held that Blakely's sentence violated the Sixth Amendment

---

[22]  "[T]he 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>."  <u>Blakely</u>, 542 U.S. at 303, 124 S. Ct. at 2537 (emphasis in original).

20

because the sentencing court based its enhancement above the 53-month statutory maximum on facts neither proved to a jury nor admitted by Blakely.  Id. at 303-04, 124 S. Ct. at 2537-2538.  Again, the Court stated that any fact that enhances a defendant's sentence beyond the statutory maximum must be proved to a jury, "[o]ther than the fact of a prior conviction."  Id. at 301, 124 S. Ct. at 2536 (emphasis added).  The majority did not specifically refer to Almendarez-Torres, but it recited with approval the rule formalized in Apprendi that included the prior-conviction exception that Almendarez-Torres established.

Although the Supreme Court decided Booker after Gibson filed this appeal, that case provides no more of a basis on which to question the present viability of Almendarez-Torres than does Apprendi or Blakely.  Like Blakely, the majorities in Booker did not mention Almendarez-Torres.[23]  Rather, Booker simply restated the rule set forth in Apprendi, including the prior-conviction exception.  Booker, 125 S. Ct. at 748.

In sum, under the Supreme Court's recent precedents neither the Fifth Amendment nor the Sixth Amendment prevented the district court from finding

---

[23]  Booker consisted of two majorities.  The first concluded that the Sentencing Guidelines, as a mandatory sentencing scheme, violate the Sixth Amendment.  Booker, 125 S. Ct. at 746.  The second concluded that this constitutional infirmity is remedied by severing those portions of the Sentencing Reform Act of 1984 that made the Sentencing Guidelines mandatory, as opposed to simply advisory.  Id.  Neither majority mentioned Almendarez-Torres.

21

the fact of Gibson's prior convictions, or using them to designate him a U.S.S.G. § 4B1.1 career offender. "[T]he government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." United States v. Burge, 407 F.3d 1183, 1188 (11th Cir. 2005) (quoting United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir. 2004)). "This conclusion was left undisturbed by Apprendi, Blakely, and Booker." United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005); see also United States v. Lester, 142 Fed. Appx. 364, 367 (11th Cir. 2005) ("[I]nsofar as the district court's enhancement of Lester's sentence under § 4B1.1 merely involved a determination Lester had prior convictions, the enhancements did not implicate Apprendi, Blakely, or Booker.").

B.

In asking us to affirm his sentence, Gibson argues that Almendarez-Torres is of "questionable force" because a majority of the Supreme Court has indicated its disapproval of the case. According to Gibson, "a majority of the Court now clearly has indicated that there is no logic to the [prior-conviction] exception." Whether or not Gibson is correct is irrelevant. It is not given to us to overrule the decisions of the Supreme Court. We have stated repeatedly, and with respect to the very issue presented in this appeal, that "we are not at liberty to disregard

22

binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court." Fla. League of Prof. Lobbyists, Inc. v. Meggs, 87 F.3d 457, 462 (11th Cir. 1996). See also United States v. Thomas, 242 F.3d 1028, 1035 (11th Cir. 2001) ("[W]e are bound to follow Almendarez-Torres unless and until the Supreme Court itself overrules that decision.") (citing United States v. Guadamuz-Solis, 232 F.3d 1363 (11th Cir. 2000)). This is so even if we are convinced that the Supreme Court will overturn its previous decision the next time it addresses the issue. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1115 (11th Cir. 2001). Though wounded, Almendarez-Torres still marches on and we are ordered to follow. We will join the funeral procession only after the Supreme Court has decided to bury it.[24]

## C.

Gibson also argues that even if the district court was bound to follow Almendarez-Torres, the fact of his prior convictions was nevertheless insufficient to designate him a career offender under U.S.S.G. § 4B1.1. According to Gibson, the Sentencing Guidelines required the Government to prove to the jury not only

---

[24] Gibson cites Dretke v. Haley, 541 U.S. 386, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004), in which the Court intimated that the continuing validity of Almendarez-Torres is a "difficult constitutional question[]," id. at 395-96, 124 S. Ct. at 1853-54, as support for his contention that a majority of the Court now believes that Almendarez-Torres should be overruled. However, the Court specifically and purposefully "avoided" that question. Id.

23

that he has prior convictions, but also that his prior convictions were felonies that involved "controlled substance offense[s]" as defined by U.S.S.G. § 4B1.2.[25]  The prior-conviction exception in Almendarez-Torres, being expressly limited in its application by the Supreme Court, did not apply to these additional facts.  As the Government did not submit these additional facts to the jury, and the district court was disallowed from finding them by Blakely, Gibson argues that there is no basis on which to designate him a career offender.

In this respect Gibson's position echoes the reasoning of the district court.  The district court concluded that U.S.S.G. § 4B1.1 requires a jury verdict on the "qualitative characterization" of each of Gibson's prior convictions.  Even if authorized to find the mere fact of Gibson's prior convictions, the district court held that Blakely did not permit it to find these additional facts.

To the contrary, whether Gibson's prior convictions were felonies involving a controlled substance is a question of law to be answered by the court, not a question of fact to be found by the jury.  See United States v. Searcy, 418 F.3d 1193, 1195 (11th Cir. 2005).  In determining whether a defendant's prior offenses

---

[25]  "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b) (2003).

qualify as controlled substance offenses under U.S.S.G. § 4B1.1, "the offense of conviction (i.e., the conduct of which the defendant was convicted) is the focus of the inquiry." Id. (quoting U.S.S.G. § 4B1.2 cmt. n. 2). In other words, the district court must focus on the statutory language of the crime of prior conviction to determine whether it is "an offense under federal or state law, punishable by a term of imprisonment of more than one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b) (2003). Of course, the interpretation of a statute is a question of law. Searcy, 418 F.3d at 1195 (citing United States v. Murrell, 368 F.3d 1283, 1285 (11th Cir. 2004). "We find no merit in [the] contention that the Sixth Amendment requires that a jury, rather than a judge, determine whether [a defendant's] convictions are within the category of offenses specified in U.S.S.G. § 4B1.1(a)." United States v. McGowan, 134 Fed. Appx. 359, 362 (11th Cir. 2005) (citing Crawford, 407 F.3d 1174; United States v. Blas, 360 F.3d 1268, 1272 (11th Cir. 2004); and United States v. Farris, 77 F.3d 391, 398 (11th Cir. 1996)). It was therefore the district court's responsibility to determine whether Gibson's prior convictions qualified him for career offender status pursuant to U.S.S.G. § 4B1.1. The failure to do so was an error of law.

25

Gibson cites our decision in United States v. Spell, 44 F.3d 936 (11th Cir. 1995), in further support of his contention that the district court was barred from finding the additional facts necessary to designate him a career offender. In Spell, the defendant challenged his classification as a career offender based on his belief that his prior burglary conviction was not a "crime of violence" under U.S.S.G. § 4B1.1(a). Id. at 938. The judgement of conviction against Spell was ambiguous as to whether he was convicted of burglary of a dwelling (a crime of violence under U.S.S.G. § 4B1.2(1)(ii)) or burglary of a structure (not a crime of violence). Id. at 939. The district court was therefore unable to determine whether Spell's prior conviction qualified him as a career offender, and relied instead on the charging document. Id. The district court concluded that Spell's conviction was for the burglary of a dwelling, designated him a career offender, and enhanced his sentence. Id.

On appeal, Spell argued that the district court was required to use a "categorical approach" when determining whether his prior conviction satisfied U.S.S.G. § 4B1.1, whereby the court could look no further than the judgment of conviction.[26] We held that the ambiguity in Spell's judgment of conviction

---

[26] "When a court considers the application of a sentencing enhancement it should generally follow a categorical approach and consider only the fact of conviction and the statutory definition of the prior offense." Burge, 407 F.3d at 1187 (internal quotations omitted).

warranted the district court's reliance on the charging document. Id. at 939. We expressly and narrowly limited the circumstances under which a district court would be permitted to look outside of the judgment of conviction: "[A] district court only may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." Id.; see also Burge, 407 F.3d at 1187 ("The district court may . . . 'look beyond the conviction when sentence enhancements are based on a defendant's prior conduct or crime.' Under such circumstances, the district court 'may look behind the judgment of conviction when it is impossible to determine from the face of the judgment or statute whether the prior crime satisfies the enhancement statute.'" (quoting United States v. Breitweiser, 357 F.3d 1249, 1254-55 (11th Cir. 2004) (emphasis in original)).[27]

Here, Gibson argues that ambiguities may exist which, under Spell, would have required the district court to inquire into the circumstances surrounding his prior convictions. Such inquiry, Gibson contends, would have violated his Sixth Amendment rights as set forth in Blakely. Gibson misapprehends our holding in

---

[27] Even when permitted, this fact-finding "'is limited to the terms of the charging document, the terms of a plea agreement or transcript of the colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information.'" Burge, 407 F.3d at 1187 (quoting United States v. Shepard, 125 S. Ct. 1254, 1263, 161 L. Ed. 2d 205 (2005)).

Spell. That case permits the district courts to find additional facts <u>only if</u>, on the face of the prior judgment of conviction, the court is unable to determine whether that conviction counted toward the defendant's U.S.S.G. § 4B1.1 career offender status.[28] The ambiguity that allows this additional fact-finding must be manifest, not conjectural.

Gibson points to no ambiguities in his prior judgments of conviction of any kind. He makes no mention of the language of the statute under which he previously was convicted. The only foundation on which his argument stands is the unsubstantiated (and legally insufficient) possibility that such ambiguities may, in theory, exist. As indicated by the second offender information filed by the Government prior to his trial, Florida Statute § 893.13, under which Gibson previously was convicted six times, clearly describes a felony involving a controlled substance;[29] no reference to any other information source is needed to make that determination. <u>Spell</u> has no application here and, contrary to Gibson's

---

[28] <u>See also</u> <u>United States v. Gay</u>, 251 F.3d 950, 952 (11th Cir. 2001) (citing <u>United States v. Rucker</u>, 171 F.3d 1359, 1363 (11th Cir. 1999), <u>cert. denied</u>, 528 U.S. 976 (1999)) ("If no ambiguities exist, the [Sentencing Guidelines] prohibit the district court from reviewing the underlying facts of a conviction to determine whether it is a crime of violence for career offender purposes [under U.S.S.G. § 4B1.1].").

[29] <u>See</u> note 5, <u>supra</u>.

assertion, presents no constitutional issue that would have barred the district court from accounting for his prior convictions.

D.

In addition to the aforementioned arguments, Gibson claims that he never stipulated to the facts of his prior convictions or consented to those facts being found by the court, as required by <u>Blakely</u>. In other words, Gibson interprets <u>Blakely</u> as requiring his waiver of his Fifth and Sixth Amendment rights to have the facts of his prior convictions charged in an indictment and proven to a jury beyond a reasonable doubt. Absent such a waiver, the district court could not make independent findings regarding his prior convictions. In light of the foregoing analysis, this argument is quickly dispatched. Again, the Fifth and Sixth Amendment concerns expressed in <u>Apprendi</u>, <u>Blakely</u> and <u>Booker</u> are not implicated when a defendant's sentence is enhanced based on his prior convictions. Indeed, "those cases exempt prior convictions from the types of facts that must be admitted by the defendant . . . in order to support a sentence enhancement." <u>Lester</u>, 142 Fed. Appx. at 367. <u>See also</u> <u>Burge</u>, 407 F.3d at 1188; <u>Marseille</u>, 377 F.3d at 1257. The Constitution did not require that Gibson stipulate to his prior convictions before the district court could enhance his

sentence.  As far as his prior convictions are concerned, Gibson had no Fifth or Sixth Amendment rights to waive.

E.

In sum, the district court's refusal to account for Gibson's prior felony controlled substance convictions when determining his Guidelines sentence was an error of law.  This error was based on the court's misinterpretation of Blakely.  Contrary to the court's interpretation, Blakely did not bar the court from finding that Gibson's prior convictions were felonies involving controlled substances.  Under Almendarez-Torres, judicial fact-finding of a defendant's prior convictions does not violate the Sixth Amendment, even though a criminal defendant generally has the right to have all facts that enhance his sentence proven to a jury beyond a reasonable doubt.  Although the Supreme Court has criticized this prior-conviction exception, the Court nevertheless affirmed it in Apprendi, Blakely, and Booker.  Our precedents have repeatedly acknowledged this exception.  Additionally, it is a question of law whether Gibson's prior convictions are felony controlled substance offenses for U.S.S.G. § 4B1.1 purposes.  The district court should, therefore, have considered those prior convictions when determining his sentencing range under the Guidelines.  This constitutes a failure correctly to

30

consult and apply the Sentencing Guidelines, and requires us to vacate Gibson's sentence.[30]

## III.

We turn now to the sentence suggested by the Sentencing Guidelines. The indictment in this case alleges that "[o]n or about February 22, 2001, at Marathon, Monroe County, in the Southern District of Florida, the defendant, Steven Gibson, having previously been convicted of a felony drug offense, did knowingly and intentionally possess with intent to distribute . . . five (5) grams or more of a mixture and substance containing a detectible amount of cocaine base, in the form known as 'crack,' in violation of Title 21, United States Code, Section[] 841(a)(1)." In finding Gibson guilty, the jury determined that the Government proved beyond a reasonable doubt that the cocaine base weighed more than five

---

[30] We note that enhancing Gibson's sentence under U.S.S.G. § 4B1.1 would not be an enhancement above his statutory maximum sentence in violation of the Fifth Amendment. In United States v. Cotton, 535 U.S. 625, 632, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002), which Gibson has cited as supporting authority, the Supreme Court held that the enhancement of a sentence above the statutory maximum on the basis of facts not alleged in an indictment violates the Fifth Amendment. The statutory maximum the Court considered in Cotton was not the maximum prescribed by the Sentencing Guidelines. Rather it was the maximum sentence prescribed by 21 U.S.C. § 841(b)(1)(C). Id. at 628, 122 S. Ct. at 1783. As we show in part III.A., the maximum sentence to which Gibson is subject under the Sentencing Guidelines (life imprisonment) cannot be greater than the statutory maximum sentence imposed by his offense of conviction, 21 U.S.C. § 841(a), and 21 U.S.C. § 841(b)(1)(B). As a result, the district court could not have violated the Fifth Amendment by imposing career offender status on Gibson and enhancing his sentence accordingly.

grams, and that Gibson previously had been convicted of at least one drug-related felony.

Under 21 U.S.C. § 841(b)(1)(B), Gibson was subject to, inter alia, a term of imprisonment between five and forty years.  The jury's finding that Gibson previously had been convicted of a drug-related felony increased this statutory range to between ten years and life imprisonment.[31]  As life imprisonment is the longest sentence to which Gibson is subject under 21 U.S.C. § 841(b)(1)(B), the district court could not impose a sentence under the Guidelines in excess of that statutory maximum.

Section 2D1.1(c) of the Sentencing Guidelines (the "Drug Quantity Table") assigns a base offense level for convictions involving a controlled substance according "to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."  U.S.S.G. § 2D1.1, Notes to Drug Quantity Table (A) (2005).  The amount of cocaine base involved in Gibson's offense therefore determines his base offense level under this subsection.  In addition, the

---

[31]  In its Sentencing Order, the district court read the jury's verdict sheet as finding "merely [Gibson's] conviction of a prior felony offense, with no specification as to whether the prior conviction involved drugs."  The district court misread the jury's verdict.  As shown by the verdict sheet, the jury separately found Gibson guilty of Count I, in which the Government explicitly alleged that Gibson had "previously been convicted of a felony drug offense."  That the specific findings of the jury, which followed its finding of guilt on Count I, did not describe Gibson's previous felony conviction as drug-related is immaterial.

Sentencing Guidelines assign to each defendant a Criminal History Category based on the defendant's criminal record. Together, Gibson's base offense level and his Criminal History Category determine his range of recommended imprisonment under the Sentencing Guidelines.

Based on the jury's finding that Gibson's offense involved more than five grams of cocaine base, the district court set Gibson's base offense level at 26.[32] The court then assigned Gibson a Criminal History Category of VI, based on his 18 criminal history points as calculated in the PSI.[33] Accordingly, the Guidelines set Gibson's range of punishment at 120 to 150 months imprisonment. Applying no downward departures,[34] the court ultimately re-sentenced Gibson to 140 months imprisonment.

---

[32] The Sentencing Order states that the jury found Gibson's offense to involve 5 kilograms or more of cocaine base. This was clearly a typographical error.

[33] Gibson did not dispute the PSI's calculation of his criminal history points or his Criminal History Category.

[34] The Government asserts that the district court granted Gibson a downward departure by refusing to categorize him as a career offender, which would have set his base offense level at 37 with a Criminal History Category of VI. The Government has mischaracterized the district court's Sentencing Order. In Gibson's original sentence, the district court did grant Gibson a downward departure under U.S.S.G. §§ 4A1.3 and 5K2.0. However, the sentence now before us was not based on the court's belief that Gibson's Criminal History Category overrepresented his criminal past, or that the sentencing range prescribed by the Guidelines was disproportionate to his offense of conviction. Rather, the district court simply believed that it was constitutionally forbidden, under Blakely, to enhance Gibson's sentence pursuant to the U.S.S.G. § 4B1.1 career offender provision.

The district court erred when it set Gibson's offense level at 26. Gibson admitted on several occasions during his sentencing hearings that his offense involved 22.6 grams of cocaine base. In fact, at Gibson's July 8, 2004 re-sentencing hearing his attorney admitted that his offense involved "22.6 grams of crack cocaine, which is the amount which the government did prove at trial." Moreover, the PSI stated that his offense involved 22.6 grams of cocaine base. Gibson has asserted no objections to any of the factual recitations contained in his PSI. He has therefore admitted all of the facts in the PSI. See Shelton, 400 F.3d at 1330 (citing United States v. Walters, 269 F.3d 1207, 1213 (10th Cir. 2001); United States v. Joshua, 40 F.3d 948, 952 (8th Cir. 1994)). Based on this higher weight of cocaine base, the Drug Quantity Table indicates that Gibson's base offense level is 28, not 26, and his corresponding imprisonment range is 140 to 175 months.

Nevertheless, Gibson's sentence as suggested by the Guidelines is not driven by U.S.S.G. § 2D1.1, or by the amount of cocaine base involved in his offense. His Guidelines sentence is driven by the fact that he is a career offender pursuant to U.S.S.G. § 4B1.1.

A.

Gibson clearly qualifies as a career offender under U.S.S.G. § 4B1.1. The PSI indicates that Gibson was 28 years old at the time he committed the offense of conviction. This fact is confirmed by Gibson's admission that he was 31 at the time of his July 8, 2004 re-sentencing hearing, and his attorney's statement during that hearing that "[e]veryone sitting in this courtroom knows that Mr. Gibson is more than 18 years old." His conviction under 21 U.S.C. § 841(a) is a felony involving a controlled substance.[35] The PSI, the Government's second offender information, and statements Gibson made before the district court confirm that he has at least two prior felony convictions that involved controlled substances. Gibson satisfies all of the criteria set forth in U.S.S.G. § 4B1.1.[36]

A defendant's base offense level under U.S.S.G. § 4B.1.1(b) is driven by the statutory maximum sentence of the offense for which he was convicted. In this respect the sentencing methodology in this subsection is different from, and supercedes, the methodology employed in U.S.S.G. § 2D1.1. Because Gibson is a career offender, the amount of cocaine base involved in his offense of conviction, whether it be five grams or 22.6 grams, is irrelevant to the ultimate determination

[35] See note 3, supra.

[36] See note 10, supra. The relevant language in the 2002 and 2005 versions of the Sentencing Guidelines are identical.

35

of his base offense level. Gibson's statutory maximum sentence pursuant to 21 U.S.C. § 841(b)(1)(B), inclusive of the 21 U.S.C. § 851 enhancement, is life imprisonment. Consequently, Gibson's base offense level is 37 according to U.S.S.G. § 4B1.1(b)(A). In addition, "[a] career offender's criminal history category in every case under this subsection shall be Category VI." U.S.S.G. § 4B1.1(b) (2005). The Sentencing Table therefore advises the district court to sentence Gibson to 360 months to life imprisonment.

B.

At Gibson's first sentencing hearing on December 6, 2001, the district court expressed grave concerns about the severity of the sentence dictated by the Guidelines. The court then granted Gibson a downward departure from the base offense level of 37 recommended by the PSI because, in the court's opinion, the Guidelines sentence overrepresented the seriousness of Gibson's criminal past. In doing so, however, the court failed to cite the specific Guidelines provision(s) under which it granted the departure, and failed to discuss its basis for granting that departure. We therefore vacated and remanded this sentence, with instructions to "proceed on the horizontal axis and discuss each criminal history category [the district court] passes over en route to the category that adequately

36

reflects Gibson's past criminal conduct, as required by <u>United States v. Smith</u>, 289 F.3d 696, 711 (11th Cir. 2002)."

1.

In <u>Smith</u>, we reiterated that the Sentencing Guidelines distinguish between two categories of departure; guided and unguided. <u>Smith</u>, 289 F.3d at 710 (citing <u>United States v. Collins</u>, 915 F.2d 618, 620 (11th Cir. 1990); <u>United States v. Fayette</u>, 895 F.2d 1375, 1377 (11th Cir. 1990)). Guided departures, which are governed by U.S.S.G. § 4A1.3, "are those departures specifically provided for in the Guidelines," and have been "explicitly and adequately considered by the Sentencing Commission." <u>Id.</u> Departures based on likelihood of recidivism or overrepresentation of criminal history fall into this category. <u>Id.</u> "[Section] 4A1.3 departures must proceed on only the horizontal axis and not the vertical axis" of the Sentencing Table. <u>Id.</u> at 711 (citing <u>United States v. Mogel</u>, 956 F.2d 1555, 1558-60 (11th Cir. 1992)). In addition, "[t]he extent of a downward departure under this subsection for a career offender within the meaning of § 4B1.1 (Career Offender) may not exceed one criminal history category." U.S.S.G. § 4A1.3(b)(3)(A) (2005). When granting a departure under this subsection, "the district court must discuss each criminal history category it passes over en route to the category that adequately reflects the defendant's past criminal conduct."

37

Smith, 289 F.3d at 711 (citing United States v. Dixon, 71 F.3d 380, 382 (11th Cir. 1995); United States v. Johnson, 934 F.2d 1237, 1239 (11th Cir. 1991); Collins, 915 F.2d at 620-21).

If on remand the district court still believes that the sentence that the Guidelines suggest for Gibson overrepresents his criminal history, and concludes that a downward departure on that basis is appropriate, it may only grant such a departure under U.S.S.G. § 4A1.3. This departure must be along the horizontal axis of the Sentencing Table, and may only be a one-category departure. Accordingly, Gibson's base offense level would remain 37, but his Criminal History Category would be reduced to V. This would yield a suggested sentencing range of 324 to 405 months imprisonment.

2.

The district court may also reduce Gibson's suggested Guidelines sentence pursuant to U.S.S.G. § 5K2.0, which provides for unguided departures. In contrast to guided departures, unguided departures under this subsection "allow[] for a departure from the prescribed guideline range when 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" Smith, 289 F.3d at 710 (citations omitted). "In determining whether to grant such

38

a departure, the district court considers two questions: (1) whether any circumstance makes the case atypical, meaning that it takes the case out of the 'heartland' of cases involving the conduct described in the applicable guideline; and (2) whether that circumstance should result in a different sentence." United States v. Schalen, 300 F.3d 1313, 1318 (11th Cir. 2005) (citing United States v. Regueiro, 240 F.3d 1321, 1324 (11th Cir.2001)). "To determine whether a factor should result in a different sentence, a district court must first decide whether the factor is forbidden, encouraged, discouraged, or unaddressed by the guidelines as a potential basis for departure." United States v. Davis, 204 F.3d 1064, 1066 (11th Cir. 1999) (citing Koon v. United States, 518 U.S. 81, 96 (1996)).

After satisfying itself of these considerations, the district court may depart downward along the vertical axis of the Sentencing Table. If the district court does so depart, it has "wide discretion" in determining Gibson's appropriate base offense level. United States v. Saunders, 318 F.3d 1257, 1270 n.18 (11th Cir. 2003) (quoting United States v. Hersh, 297 F.3d 1233, 1251 (11th Cir. 2002)). The district court need not, in this instance, make explicit explanations for its departures. Id. "So long as the district court's decision is supported by the record and the court clearly resolves any disputed factual issues, a simple statement of the district court's conclusion is sufficient." Id. (quoting United States v. Rodriguez

De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (emphasis in original)).  The district

court may not, however, consider overrepresentation of Gibson's criminal past in

granting a departure under this subsection, as that factor is properly considered

under U.S.S.G. § 4A1.3.  Smith, 289 F.3d at 710.

3.

We emphasize again that Booker has rendered the Sentencing Guidelines

merely advisory.  Booker, 125 S. Ct. at 756-57.  The district court need not impose

the sentence suggested by the Guidelines.  Nevertheless, the district court must

"consider the Guidelines 'sentencing range established for . . . the applicable

category of defendant,'" id. at 764, and provide reasons if it imposes a sentence

other than the one suggested by those Guidelines.  See Smith, 289 F.2d at 711.

Moreover, the courts must adhere to the sentencing principles set forth in 18

U.S.C. § 3553(a), which include "the available sentences, the applicable Guideline

range, the nature and circumstances of the offense, and the need for the sentence to

reflect the seriousness of the offense, promote respect for the law, provide just

punishment for the offense, and provide the defendant with needed medical care."

United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005) (citing 18

U.S.C. § 3553(a)). The district court's re-sentencing order must therefore reflect due consideration of the factors and policies that animate § 3553(a).[37]

## IV.

The district court erred when it concluded that <u>Blakely</u> required the Government to charge in an indictment, and prove to a jury beyond a reasonable doubt, that Gibson satisfied the requirements for designation as a career offender pursuant to U.S.S.G. § 4B1.1. The Supreme Court's decisions in <u>Almendarez-Torres</u>, <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> explicitly allow sentencing courts to find the fact of a defendant's prior convictions, and to determine whether those prior convictions are felonies involving a controlled substance. By committing this error the district court failed properly to consult the Sentencing Guidelines before determining Gibson's sentence, as required by <u>Booker</u> and our precedents. Accordingly, we **VACATE** Gibson's sentence and **REMAND** the case to the district court for re-sentencing. In reconsidering Gibson's sentence, the district court must consult the Guidelines in a manner consistent with our above

---

[37] This is not to say that we require the district court to account for each item in the "laundry list" of § 3553(a) factors. <u>See</u> <u>United States v. Scott</u>, 426 F.3d 1324, 1329 (11th Cir. 2005). The district court need only consider the pertinent § 3553(a) factors and set forth its reasons for the departure. <u>Id.</u> (citing <u>United States v. Robles</u>, 408 F.3d 1324, 1328 (11th Cir. 2005); <u>United States v. Eggersdorf</u>, 126 F.3d 1318, 1323 (11th Cir. 1997); <u>United States v. Brown</u>, 104 F.3d 1254, 1256 (11th Cir. 1997); <u>United States v. West</u>, 898 F.2d 1493, 1503 (11th Cir. 1990)).

discussion although, in light of <u>Booker</u>, the court is not bound to apply the sentence indicated by the Guidelines.  The sentence the court imposes on Gibson must be consistent with the sentencing principles set forth in 18 U.S.C. § 3553(a), and the court must provide adequate indication of the factors that undergird that sentence.

**SO ORDERED.**