[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 28, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13717
Non-Argument Calendar

_____

D. C. Docket No. 07-20152-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WAYNE LAWSON ANTHONY STRAW,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 28, 2008)**

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Wayne Straw appeals his 50-month sentence for illegal re-entry after deportation, in violation of 8 U.S.C. § 1326(a), (b)(2). After review, we affirm.

## I. BACKGROUND

Straw, a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident in 1979, when he was fifteen years old. In 1986, Straw was convicted of assault and battery with a dangerous weapon and carrying a firearm without a license and was deported to Jamaica.[1] In 1989, Straw was convicted of illegally reentering the United States, served a 180-day sentence and was deported. In 1993, Straw was again convicted of illegal reentry and was given a 46-month sentence, after which he was deported a third time.

In February 2007, Straw was discovered inside the United States while Boarder Patrol agents and the Drug Enforcement Administration were conducting a controlled delivery of marijuana. Straw was a passenger in a truck that arrived to pick up the crate containing the marijuana. Straw was questioned and claimed to be a lawful permanent resident named Richard Grant. Although Straw was not charged in connection with the marijuana, he was taken into custody for failing to

---

[1]Straw was also convicted of possession with intent to distribute a controlled substance in 1981. The parties agreed that two 1982 convictions had since been vacated, and the district court stated that it would not consider the 1982 vacated convictions.

carry a certificate of alien registration. A check of Straw's fingerprints revealed his true identity and immigration history.

Straw pled guilty to one count of having been found in the United States after having been previously removed and without the consent of the Attorney General. Straw's Presentence Investigation Report ("PSI") recommended, among other things, a 16-level increase in Straw's offense level, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), because Straw previously had been convicted of a crime of violence. Straw did not object to this or any other guidelines calculations in the PSI. The PSI calculated an advisory guidelines range of 41 to 51 months' imprisonment. In addition, Straw was subject to a twenty-year statutory maximum sentence, rather than a two-year statutory maximum sentence, because his removal had been subsequent to a conviction that was an aggravated felony. See 8 U.S.C. § 1326(b)(2).

At sentencing, the district court adopted the PSI's advisory guidelines calculations and, after hearing arguments from the parties, imposed a 50-month sentence.[2] Straw filed this appeal.

## II. DISCUSSION

Straw argues that the district court committed plain error when it enhanced

_____

[2]At sentencing, the district court denied the government's request for an upward departure from the advisory guidelines range. That ruling is not at issue in this appeal.

3

his sentence based on prior convictions that were neither alleged in his indictment nor proven to a jury beyond a reasonable doubt.[3]  However, as Straw admits, this argument is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998).  We repeatedly have explained that, even after Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and its progeny Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), we are bound by Almendarez-Torres until it is explicitly overruled by the Supreme Court.  See, e.g., United States v. Greer, 440 F.3d 1267, 1273-74 (11th Cir. 2006); United States v. Gibson, 434 F.3d 1234, 1246-47 (11th Cir. 2006).

Furthermore, at sentencing the district court did not resolve any disputed facts related to Straw's prior convictions.  Straw did not object to the prior convictions listed in his PSI or dispute the PSI's factual accuracy and thus admitted the existence of those convictions for sentencing purposes.  See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (explaining that there is no statutory Booker error where the defendant's sentence was enhanced based on facts to which the defendant did not object in the PSI at sentencing); United States v. Burge, 407 F.3d 1183, 1191 (11th Cir. 2005).  Therefore, the district court did not commit

---

[3]Because Straw did not raise this sentencing issue in the district court, our review is for plain error.  See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).

error, plain or otherwise, in using Straw's prior convictions to enhance his sentence.

Straw also argues that his 50-month sentence is substantively unreasonable.[4] According to Straw, the district court placed too much emphasis on his criminal history and repeated illegal reentries into the United States to the exclusion of mitigating factors, such as the presence of his family in, and his cultural assimilation into, the United States.

We review the substantive reasonableness of a defendant's sentence for abuse of discretion. See Gall v. United States, 552 U.S. ___, 128 S. Ct. 586, 597 (2007); United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). In arriving at a reasonable sentence, the district court must correctly calculate the advisory guidelines range and consider that advisory guidelines range and the factors in 18 U.S.C. § 3553(a).[5] See Pugh, 515 F.3d at 1189-90; United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).[6] Our review for substantive reasonableness is also

[4]Straw does not argue that his sentence is procedurally unreasonable.

[5]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to afford adequate deterrence, to promote respect for the law, to provide just punishment for the offense, to protect the public, and to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the advisory guidelines range; (5) pertinent Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3553(a).

[6]On appeal, Straw does not challenge the district court's guidelines calculations.

guided by the § 3553(a) factors, taking into account the totality of the circumstances. Pugh, 515 F.3d at 1191. We will remand for resentencing only "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. (quotation marks omitted).

At Straw's sentencing hearing, the government argued for a sentence above the advisory guidelines range based on Straw's criminal history. Among other things, the government argued that the prior 46-month sentence for illegal reentry had not deterred Straw from reentering the United States a third time and that a higher sentence was necessary to ensure deterrence.

Straw argued for a sentence at the low end of the guidelines range based on his family ties in the United States and his own cultural assimilation. Straw argued that he was being punished for merely trying to be with his children and provide for them and that the public did not need to be protected from him.

The district court acknowledged that there was "some appeal" to Straw's argument in mitigation, but also noted that Straw had illegally reentered the United States on three occasions and had committed several other crimes. In response, Straw pointed out that other than his illegal reentry offenses, all of his crimes

occurred over twenty years ago when he was 22 years old or younger, and argued that his subsequent illegal reentry offenses were motivated by a desire to be with his family.

The district court considered a letter it received from Straw and Straw's statement to the court, both of which described the discrimination people face who have grown up in the United States and then are deported to Jamaica. The district court also heard a statement from Straw's wife, who described Straw's support for his family and the negative effect Straw's incarceration was having on his oldest son. The district court stated that it had considered "the statements of all parties, the presentence report . . . and the statutory factors" and imposed a 50-month sentence.

The record indicates that the district court did not disregard mitigating factors in arriving at Straw's sentence. In fact, the district court expressly considered Straw's arguments in mitigation, including his family ties and cultural assimilation, and concluded that they were outweighed by Straw's recidivism and criminal history. This is Straw's third illegal reentry offense, and his prior 46-month sentence did not deter the instant offense. Under the circumstances, we cannot say that the district court committed a clear error of judgment in weighing the § 3553(a) factors or that it abused its discretion in imposing a 50-month

7

sentence at the high end of the advisory guidelines range.

**AFFIRMED.**