[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 30, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12339
Non-Argument Calendar

_____

D. C. Docket No. 05-00514-CR-T-26-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN ANTONIO ESQUIVEL-ARELLANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 30, 2006)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Juan Antonio Esquivel-Arellano appeals his 36-month sentence for

unlawfully reentering the United States after previously having been convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2). After review, we affirm in part and reverse in part.

## I. BACKGROUND

Esquivel-Arellano, a native and citizen of Mexico, came to the United States illegally in about 1992 and resided in Atlanta, Georgia. In 1995, he received a federal misdemeanor conviction for illegal entry into the United States and was deported to Mexico. In 1999, Esquivel-Arellano was convicted in Georgia state court of aggravated stalking, a felony offense, and was again deported to Mexico. In November 2005, a Florida deputy sheriff stopped Esquivel-Arellano for a traffic violation and discovered that he had an active immigration warrant for his arrest. After Immigration and Customs Enforcement ("ICE") agents took Esquivel-Arellano into custody, Esquivel-Arellano admitted that he was in the United States illegally and already had been deported twice.

Esquivel-Arellano was charged with one count of unlawfully reentering the United States after having been convicted of an aggravated felony (his Georgia aggravated stalking conviction) and subsequently deported. See 8 U.S.C. § 1326(a). The government filed a notice of penalties and factual basis for his § 1326(a) offense, notifying Esquivel-Arellano that he was subject to the maximum

2

term of imprisonment of 20 years, pursuant to § 1326(b)(2), as a result of his Georgia felony conviction for aggravated stalking.  See 8 U.S.C. § 1326(b)(2).

Esquivel-Arellano waived his right to a jury trial.  After a bench trial, the district court found Esquivel-Arellano guilty.

The presentence investigation report ("PSI") assigned Esquievel-Arellano a base offense level of 8 pursuant to U.S.S.G. § 2L1.2(a).  The PSI recommended: (1) a 16-level increase, pursuant to § 2L1.2(b)(1)(A), because Esquivel-Arellano previously had been deported after being convicted of aggravated stalking, which the PSI concluded was a "crime of violence," and (2) a 2-level reduction, pursuant to U.S.S.G. § 3E1.1(a), for acceptance of responsibility.[1]   With a total offense level of 22 and a criminal history category of II, Esquivel-Arellano's advisory guidelines range was 46 to 57 months' imprisonment.

Esquivel-Arellano objected to the 16-level enhancement that was based on the characterization of his Georgia aggravated stalking conviction as a "crime of violence."  Esquivel-Arellano also argued that 8 U.S.C. § 1326 was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and that enhancing his sentence based on his prior aggravated stalking

---

[1]The PSI explained that Esquivel-Arellano was eligible for a two-level acceptance of responsibility reduction because, although Esquivel-Arellano proceeded to trial, he stipulated to facts that satisfied the elements of the offense and asserted only issues that did not relate to his factual guilt in order to preserve them.

3

conviction violated the Double Jeopardy Clause.

The district court overruled Esquivel-Arellano's objections and concluded that § 1326 was constitutional. The district court adopted the PSI's guidelines calculations.

In mitigation, Esquivel-Arellano submitted various exhibits, including a letter from his ex-wife, Shannon Cohran, explaining her role in Esquivel-Arellano's aggravated stalking conviction. In an effort to take revenge on Esquivel-Arellano, Cohran had asked him to come over so they could "work things out," knowing that this would violate a protective order and increase the stalking charge to a felony. Cohran regretted the way she had treated her ex-husband. Esquivel-Arellano also included several letters from family and friends attesting to his good character. Noting that he was an outstanding and productive member of the community, Esquivel-Arellano asked the district court to consider Cohran's letter in mitigation of the 16-level enhancement.

The district court acknowledged Cohran's story and considered her "recantation" under the 18 U.S.C. § 3553(a) factor of history and characteristics of the defendant. The district court also stated that it had read and was impressed by the letters submitted and that Esquivel-Arellano did not fit the profile of someone with a criminal history category of II. The district court noted, however, that

4

Esquivel-Arellano had entered the country illegally three times. The district court sentenced Esquivel-Arellano to 36 months' imprisonment, a sentence below his advisory guidelines range of 46 to 57 months. Esquivel-Arellano filed this appeal.

## II. DISCUSSION

### A.    Challenge to Constitutionality of § 1326(b)(2)

Under 8 U.S.C. § 1326(a), an alien who is convicted of illegal reentry into the United States following removal is subject to a statutory maximum sentence of two years. 8 U.S.C. § 1326(a). However, under § 1326(b)(2), if the alien was convicted of an "aggravated felony" prior to his removal, the statutory maximum sentence is twenty years. Id. § 1326(b)(2).[2] The statutory definition of an

---

[2]Section 1326 states in relevant part:
(a) In general
    Subject to subsection (b) of this section, any alien who–
        . . .
        (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
    shall be fined under Title 18, or imprisoned not more than 2 years, or both.
(b) Criminal penalties for reentry of certain removed aliens
    Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection–
        . . .
        (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;
8 U.S.C. § 1326(a)-(b)(2).

5

"aggravated felony" includes not only a laundry list of offenses, such as murder, rape, drug trafficking, money laundering, felony theft, child pornography, racketeering, alien smuggling and passport forgery, but also any "crime of violence" for which the term of imprisonment is at least one year.  Id. § 1101(a)(43).

Esquivel-Arellano argues that § 1326(b)(2) is unconstitutional under Apprendi because it authorizes the district court to increase a defendant's statutory maximum sentence based on judge-found facts about a prior conviction, namely the characterization of the prior conviction as an "aggravated felony."[3]  However, there is no Apprendi error because the Supreme Court exempted prior convictions from its Apprendi holding.

In Apprendi, the Supreme Court concluded that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490, 120 S. Ct. at 2363-64.  In so holding, the Supreme Court declined to revisit its earlier decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), which held that a prior conviction that increases a defendant's penalty need not be charged in the

_____

[3]We review a defendant's preserved constitutional challenges to his sentence de novo, but will reverse only for harmful error.  United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

6

indictment or proven to a jury.[4] Id. at 489-90, 120 S. Ct. at 2362. In the Supreme

Court's subsequent opinions extending Apprendi, including Blakely v.

Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and United States v. Booker,

543 U.S. 220, 125 S. Ct. 738 (2005), it has continued to exempt prior convictions

from indictment and jury-proof requirements of the Fifth and Sixth Amendments.

Recently, in a concurring opinion in Shepard v. United States, 544 U.S. 13, 125 S.

Ct. 1254 (2005), Justice Thomas observed that "a majority of the Court now

recognizes that Almendarez-Torres was wrongly decided," and suggested that the

Supreme Court reconsider the prior conviction exception "in an appropriate case."

544 U.S. at 27-28, 125 S. Ct. 1264 (Thomas, J., concurring). Nonetheless, as this

Court repeatedly has explained since Shepard, we are bound by Almendarez-

Torres unless and until it is explicitly overruled by the Supreme Court. See, e.g.,

United States v. Greer, 440 F.3d 1267, 1273-76 (11th Cir. 2006); United States v.

Gibson, 434 F.3d 1234, 1246-47 (11th Cir. 2006).

In an attempt to circumvent the Almendarez-Torres rule, Esquivel-Arellano

argues that it applies only to the fact of conviction, i.e. its existence, and not to

whether his prior conviction is an "aggravated felony" for purposes of

§ 1326(b)(2). However, this Court has also repeatedly rejected that claim. See,

_____

[4]Notably, Almendarez-Torres involved the same penalty provision at issue in this case – 8 U.S.C. § 1326(b)(2).

7

e.g., United States v. Day, 465 F.3d 1262, 1264-65 (11th Cir. 2006); Greer, 440

F.3d at 1274-75; Gibson, 434 F.3d at 1248; United States v. Gallegos-Aguero, 409

F.3d 1274, 1277 (11th Cir. 2005).[5]

## B.    Double Jeopardy Clause

We also reject Esquivel-Arellano's contention that the district court violated

the Double Jeopardy Clause by enhancing his sentence based on his prior

aggravated stalking conviction.[6]  The Fifth Amendment's Double Jeopardy Clause

provides that no person shall "be subject for the same offence to be twice put in

jeopardy of life or limb."  U.S. Const. amend. V  The Double Jeopardy Clause

protects against "the imposition of multiple punishments for the same offense."

United States v. Dowd, 451 F.3d 1244, 1251 (11th Cir. 2006).  Sentencing

enhancements for prior criminal conduct, however, do not amount to a second

punishment for purposes of the Double Jeopardy Clause.  See Monge v. California,

524 U.S. 721, 727-34, 118 S. Ct. 2246, 2250-53 (1998) (concluding that the

Double Jeopardy Clause does not apply in the non-capital sentencing context);

Witte v. United States, 515 U.S. 389, 398-401, 115 S. Ct. 2199, 2205-07 (1995)

---

[5]On appeal, Esquivel-Arellano does not argue that his aggravated stalking conviction is not an "aggravated felony" for purposes of § 1326(b)(2), but instead argues only that Apprendi requires that this "aggravated felony" issue be determined by the jury and precludes district courts from making that finding.

[6]We review "de novo, as a pure question of law, any possible violation of the Double Jeopardy Clause."  United States v. Thurston, 362 F.3d 1319, 1322 (11th Cir. 2004).

8

(concluding that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted"); United States v. Carey, 943 F.2d 44, 46-47 & n.4 (11th Cir. 1991) (explaining that, while "[e]nhancement of a sentence based on criminal conduct other than that underlying the instant conviction has the practical effect of penalizing the defendant for that conduct . . ., it is not considered 'punishment' for that conduct in the double jeopardy context because the court is sentencing the defendant only for the instant offense, which is considered more serious because of the defendant's other criminal conduct"). Accordingly, the district court did not violate the Double Jeopardy Clause by enhancing Esquivel-Arellano's sentence based on his prior conviction.

## C.  16-level Increase Under U.S.S.G. § 2L1.2(b)(1)(A)(ii)

The Sentencing Guidelines provide for a 16-level offense level enhancement if the defendant was removed after having been convicted of a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Application Notes to § 2L1.2(b)(1) provide that a "crime of violence" is "any offense under . . . state . . . law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

At sentencing, the district court concluded that Georgia's crime of

aggravated stalking has as an element the threatened use of physical force and is a "crime of violence" within the meaning of § 2L1.2(b)(1)(A)(ii). Consequently, the district court increased Esquivel-Arellano's offense level by 16 levels. On appeal, Esquivel-Arellano argues that this guidelines enhancement was error.[7]

Courts generally apply a categorical approach when determining whether a prior conviction is a qualifying offense under the Armed Career Criminal Act ("ACCA"), which means the court may "look only to the fact of conviction and the statutory definition of the prior offense." See Taylor v. United States, 495 U.S. 575, 600-02, 110 S. Ct. 2143, 2159-60 (1990) (applying the categorical approach in the ACCA context). In United States v. Spell, 44 F.3d 936 (11th Cir. 1995), this Court examined the career offender guidelines in § 4B1.2 and pointed out that, while the Supreme Court's reasoning in Taylor often will guide our decision about qualifying offenses under the guidelines, the guidelines commentary rejects its "categorical approach" and expressly allows sentencing courts to look behind state convictions, albeit to a limited extent. Spell, 44 F.3d at 939.[8] Nonetheless, this

_____

[7]We review de novo a district court's determination that a prior conviction qualifies as a crime of violence under the Sentencing Guidelines. United States v. Orduno-Mireles, 405 F.3d 960, 961 (11th Cir.), cert. denied, 126 S. Ct. 223 (2005).

[8]While Spell embraces Taylor's reasoning, it rejects Taylor's "categorical approach." The commentary cited in Spell from the 1992 version of the guidelines states that "the conduct of which the defendant was convicted is the focus of the inquiry." U.S.S.G. § 4B1.2, cmt. n.2 (1992). That language is also contained in the present version of the guidelines. U.S.S.G. § 4B1.2, cmt. n.2 (2006).

10

Court recently indicated a categorical approach also "generally" applies to determining whether a prior conviction is a qualifying offense for enhancement purposes under U.S.S.G. § 2L1.2(b)(1)(A). See United States v. Aguilar-Ortiz, 450 F.3d 1271, 1273 (11th Cir. 2006).

In any event, where the judgment of conviction and the criminal statute are ambiguous and it is impossible to determine if the prior conviction qualifies, the district courts, in both ACCA and guidelines determinations, may look to the facts underlying a prior conviction to determine whether it qualifies. Aguilar-Ortiz, 450 F.3d at 1273, 1275-76 (concluding that Florida statute is ambiguous and looking to facts of case to determine whether prior conviction qualified for 12-level enhancement in § 2L1.2(b)(1)(A)(i) for drug trafficking offenses). In examining those facts, the district court is generally limited to examining the charging documents, jury instructions, a bench-trial judge's findings of fact and conclusions of law, the terms of a plea agreement, a transcript of the plea colloquy or other comparable judicial records. Shepard, 544 U.S. at 19-20, 26, 125 S. Ct. at 1259-60, 1263; Greer, 440 F.3d at 1275.

Here, we conclude that Esquivel-Arellano's conviction and Georgia's aggravated stalking statute in O.C.G.A. § 16-5-91 are ambiguous. Section 16-5-91 makes it a felony to follow, place under surveillance or contact another person in

violation of a court order and without their consent for the purposes of "harassing

or intimidating" that person:

> A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

O.C.G.A. § 16-5-91(a). "Harassing and intimidating" is defined in O.C.G.A. § 16-

5-90 as willful conduct that places persons in reasonable fear for their or their

family member's safety by a pattern of harassing and intimidating behavior that

serves no legitimate purposes, as follows:

> For purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

O.C.G.A. § 16-5-90.  However, § 16-5-90 adds, "This Code section shall not be

construed to require that an overt threat of death or bodily injury has been made."

Id.

The definition of "harassing and intimidating" is drafted broadly enough that

12

a defendant can be convicted under § 16-5-91(a) with or without the use, attempted use or threatened use of physical force.  See, e.g., Johnson v. Smith, 260 Ga. App. 722, 580 S.E.2d 674 (2003) (affirming stalking conviction where defendant repeatedly placed victim "under surveillance, took pictures of her and shouted at her"); Johnson v. State, 264 Ga. App. 889, 592 S.E.2d 507 (2003) (affirming aggravated stalking conviction where defendant twice knocked on victim's door and shouted that he wanted to talk with her and broke a window); Stevens v. State, 261 Ga. App. 73, 581 S.E.2d 685 (2003) (affirming aggravated stalking conviction where defendant continuously telephoned victim and appeared uninvited at victim's apartment and demanded entrance).

Thus, Georgia's aggravated stalking statute prohibits a wide range of conduct and a § 16-5-91 conviction is not necessarily for a "crime of violence" within the meaning of § 2L1.2(b)(1)(A)(ii).  Rather, whether an aggravated stalking conviction under Georgia's statute qualifies as a "crime of violence" under § 2L1.2(b)(1)(A)(ii) depends on the facts of the case.

Here, the record is silent as to the underlying facts of Esquivel-Arellano's aggravated stalking conviction because the government did not submit any supporting court documents.  The district court considered only the statute in applying the 16-level guidelines enhancement.  Because Esquivel-Arellano's

13

aggravated stalking conviction was not necessarily for a crime of violence, the

district court erred in applying the 16-level enhancement based solely on the

statute.

Accordingly, we vacate and remand to the district court for the limited

purpose of resentencing Esquivel-Arellano without the 16-level enhancement. On

remand, the district court shall consider Esquivel-Arellano's correctly calculated

advisory guidelines range of 8 to 14 months' imprisonment and the 8 U.S.C. §

3553(a) factors in determining a reasonable sentence.[9]

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

[9]Under U.S.S.G. § 2L1.2(b)(1)(D), Esquivel-Arellano's felony aggravated stalking conviction qualifies as "any other felony," resulting in a 4-level increase to his 8-level base offense level. After a 2-level decrease for acceptance of responsibility, Esquivel-Arellano's total offense level is 10. With a criminal history category II, Esquivel-Arellano's advisory guidelines range is 8 to 14 months' imprisonment.

As this is a limited remand, the parties may not reargue issues already or necessarily decided during the first sentencing that either have been affirmed in this appeal or could have been but were not raised during this appeal. See United States v. Davis, 329 F.3d 1250, 1252 (11th Cir. 2003) (explaining that when the appellate court issues a limited mandate, "the trial court is restricted in the range of issues it may consider on remand").