RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

  *v.*

MICHAEL JOHNSON,
     *Defendant-Appellant.*

No. 11-5769

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cr-00145-1—Aleta Arthur Trauger, District Judge.

Argued: July 20, 2012

Decided and Filed:  February 20, 2013

Before:  BOGGS and WHITE, Circuit Judges; and BLACK, District Judge.[*]

─────────────────

## COUNSEL

**ARGUED:** Michael J. Flanagan, Nashville, Tennessee, for Appellant.  Clay T. Lee, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael J. Flanagan, Nashville, Tennessee, for Appellant.  Philip H. Wehby, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

─────────────────

## OPINION

─────────────────

HELENE N. WHITE, Circuit Judge.  Michael Johnson appeals the district court's denial of his motion to suppress physical evidence as well as the district court's

─────────────

[*]The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

determination that his Kentucky state stalking conviction is a violent felony under the Armed Career Criminal Act (ACCA).  We AFFIRM.

**I.**

On January 11, 2010, Officer Evon Parks stopped the car driven by Johnson based on a seat-belt law violation.  As Officer Parks approached the vehicle, he smelled burnt marijuana and noticed a second license plate sitting on the back seat of the vehicle.  Upon questioning Johnson and his female passenger, the passenger admitted she had smoked marijuana in the car a few minutes earlier.

During the stop, Officer Parks requested Johnson's license and registration and the passenger's identification information.  The passenger initially provided Officer Parks with her sister's information rather than her own.  Officer Parks left Johnson's vehicle to enter the information he had received into the national database, NCIC.  At that point, Johnson gestured to Officer Parks and asked to speak with him away from the vehicle.  After Officer Parks agreed, Johnson informed Officer Parks that he knew he would be arrested because a condition of release for a prior conviction required him to stay away from the passenger.  Johnson also told Officer Parks that he was a convicted felon and had a loaded gun underneath the passenger seat, but could convince the passenger to claim ownership of the weapon.  Once NCIC confirmed that Johnson in fact had a condition of release ordering him to stay away from a person named LuShanda Giles, Officer Parks handcuffed Johnson and placed him in the back of the police vehicle.  Officer Parks then asked the passenger to exit the vehicle and, based on the aroma of marijuana in the vehicle, also asked to search her purse.  Officer Parks then located the passenger's real identifying information and confirmed that she was LuShanda Giles.  He searched the vehicle and recovered the weapon.  After Officer Parks conducted the search, NCIC confirmed that Johnson was a convicted felon, and also informed Officer Parks that Johnson had an active warrant for his arrest.

The government indicted Johnson on May 26, 2010, on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924.  On November 23, 2010, Johnson filed a motion to suppress the firearm on four grounds:

1) the initial traffic stop was not supported by reasonable suspicion or probable cause; 2) the stop of Johnson's vehicle was not the result of a valid traffic stop; 3) there was no valid consent to search Johnson's vehicle; and 4) Johnson's statements to Officer Parks were obtained in violation of his Fifth Amendment right to remain silent and in contravention of his Miranda rights.

The district court held a suppression hearing and denied Johnson's motion orally from the bench.

On March 7, 2011, Johnson pleaded guilty to the sole count of the indictment pursuant to a conditional plea petition wherein he reserved the right to appeal the denial of his motion to suppress. In its sentencing memorandum, the government argued that Johnson should be sentenced as an armed career criminal based on his four qualifying felony convictions under the ACCA: Aggravated Burglary; Sale of a Controlled Substance Over 0.5 grams; First-Degree Stalking; and Facilitation to Commit Aggravated Robbery.

Johnson disputed that his facilitation and stalking convictions were qualifying felonies under the ACCA. The district court agreed with Johnson that his Tennessee state conviction of facilitation to commit aggravated robbery was not a violent felony based on our then-recent decision in *United States v. Vanhook*, 640 F.3d 706 (6th Cir. 2011). However, the district court found that Johnson's Kentucky conviction of first-degree stalking did so qualify. The court sentenced Johnson to 180 months in prison, the minimum mandatory sentence under the ACCA, with five years of supervised release.

**II.**

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*," *United States v. Simpson*, 520 F.3d 531, 534 (6th Cir. 2008) (internal quotation marks omitted), and we consider the evidence "in the light most favorable to the United States." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000).

On appeal, Johnson claims that the court erred in denying his motion to suppress because the search of his vehicle was not incident to a valid arrest.[1]  Johnson argues that Officer Parks arrested him prior to confirming the identity of the passenger and that without Officer Parks knowing that the passenger was actually LuShanda Giles, the person listed on Johnson's conditions of release, Johnson should not have been arrested for being with the passenger.

This argument lacks merit.  Johnson does not challenge the stop, and "an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Bailey*, 407 F. App'x 27, 28–29 (6th Cir. 2011) (quoting *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002)).  *See also Carroll v. United States,* 267 U.S. 132, 149 (1925) ("[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid").  As mentioned, the passenger admitted to Officer Parks that she smoked marijuana in the vehicle minutes before the traffic stop.

More generally, "[u]nder the automobile exception to the warrant requirement, 'an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Redmond*, Nos. 10-5636, 10-5644, 2012 WL 1237787, at *4 (6th Cir. Apr. 13, 2012) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)).  Aside from the probable cause that arose from Officer Parks smelling marijuana in the vehicle, Johnson also voluntarily informed Officer Parks that he was a convicted felon in possession of a firearm.  Although Officer Parks did not obtain corroboration of Johnson's felon status prior to conducting the search, "'[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support

---

[1]On appeal, Johnson does not raise the arguments made below that the initial traffic stop for the seatbelt violation was not supported by reasonable suspicion or probable cause, or that his statements were obtained in violation of his *Miranda* rights.

a finding of probable cause to search.'"  *United States v. Burton*, 334 F.3d 514, 519 (6th Cir. 2003) (quoting *United States v. Harris*, 403 U.S. 573, 583 (1971)).

Because Officer Parks had probable cause to search Johnson's vehicle, the district court's denial of Johnson's motion to suppress is affirmed.

## III.

Johnson next argues that the district court erred in determining that his conviction under Kentucky's first-degree stalking statute is a violent felony under the ACCA.  We review this issue *de novo.  United States v. Bartee*, 529 F.3d 357, 358–59 (6th Cir. 2008).

Under the ACCA, a defendant who violates 18 U.S.C. § 922(g) and has three prior convictions of serious drug offenses or violent felonies must receive a fifteen-year mandatory minimum sentence.  *United States v. Johnson*, 675 F.3d 1013, 1016 (6th Cir. 2012) (citing 18 U.S.C. § 924(e)(1)).  The ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . .  that---
>
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B).  We refer to 18 U.S.C. § 924(e)(2)(B)(i) as the "force" prong and the portion of 18 U.S.C. § 924(e)(2)(B)(ii) involving the non-enumerated offenses as the "residual clause."

In *United States v. Wynn*, we explained:

> To determine whether a prior conviction constitutes a "crime of violence,"[2] we must apply the categorical approach . . . .  Under this categorical approach, the court must look only to the *fact of conviction*

---

[2]"A 'crime of violence' under the career-offender provision is interpreted identically to a 'violent felony' under ACCA."  *United States v. Young*, 580 F.3d 373, 379 n.5 (6th Cir. 2009).

and the statutory definition-not the facts underlying the offense-to determine whether that definition supports a conclusion that the conviction was for a crime of violence. . . .   There is, however, an exception to the categorical approach:  When the statutory definition of the prior crime to which the defendant pleaded guilty is ambiguous . . . the court may examine . . . the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

579 F.3d 567, 571 (6th Cir. 2009) (internal quotation marks and citations omitted).

Johnson pleaded guilty to first-degree stalking in 1998.  Neither party indicates which provision of the Kentucky stalking statute Johnson pleaded guilty under, and there are no documents from the Kentucky state court in this record that can provide further clarity.  Because the categorical approach requires us to first look solely at the face of the statute rather than the facts of the offense, the absence of state-court documents will only be problematic if we conclude that Kentucky's stalking statute is ambiguous, in that an individual can violate the statute in a way that constitutes a violent felony and in a way that does not.

Under Chapter 508 of the Kentucky Penal Code:

(1)  A person is guilty of stalking in the first degree,

(a)     When he intentionally:

1. Stalks another person; and

2. Makes an explicit or implicit threat with the intent to place that person in reasonable fear of:

a. Sexual contact as defined in KRS 510.010;

b. Serious physical injury; or

c. Death; and

(b)     1.  A protective order has been issued by the court to protect the same victim or victims and the defendant has been served with the summons or order or has been given actual notice; or

2.   A criminal complaint is currently pending with a court, law enforcement agency, or prosecutor by the same victim or victims and the defendant has been served with a summons or warrant or has been given actual notice; or

3.   The defendant has been convicted of or pled guilty within the previous five (5) years to a felony or to a Class A misdemeanor against the same victim or victims; or

4.   The act or acts were committed while the defendant had a deadly weapon[3] on or about his person.

Ky. Rev. Stat. § 508.140.

"Stalk" is defined as:

engaging in an intentional course of conduct:

1.        Directed at a specific person or persons;

2.        Which seriously alarms, annoys, intimidates, or harasses the person or  persons; and

3.        Which serves no legitimate purpose.

. . .

The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.

. . .

"Course of conduct" means a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose.

*Id.* § 508.130(1) and (2).

---

[3]In Kentucky, a deadly weapon includes any of the following:

(a)  A weapon of mass destruction;
(b)  Any weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged;
(c)  Any knife other than an ordinary pocket knife or hunting knife;
(d)  Billy, nightstick, or club;
(e)  Blackjack or slapjack;
(f)  Nunchaku karate sticks;
(g)  Shuriken or death star; or
(h)  Artificial knuckles made from metal, plastic, or other similar hard material[.]

Ky. Rev. Stat. § 500.080(4).

Johnson argues that a person can be convicted under Kentucky's first-degree stalking statute for only making threats that intentionally cause a person to *fear* physical harm, rather than for actually threatening physical harm to another. According to Johnson, causing a person to fear physical harm does not require the use, attempted use, or threatened use of physical force.

This Circuit has not yet determined whether any state stalking conviction is a violent felony under the ACCA. The Fourth Circuit did, however, reject a similar argument in *United States v. Seay*, 553 F.3d 732, 739 (4th Cir. 2009). In *Seay*, the court considered whether North Carolina's felony stalking statute is a crime of violence under the career-offender provision of the sentencing guidelines. Under North Carolina's felony stalking statute at the time:

> a person commits the offense of stalking if the person willfully on more than one occasion follows or is in the presence of another person without legal purpose and with the intent to cause death or bodily injury or with the intent to cause emotional distress by placing that person in reasonable fear of death or bodily injury.

N.C. Gen. Stat. § 14-277.3.[4]

In *Seay*, the defendant, who had been charged with violating the "emotional distress" prong of the statute, argued that the statute "did not require that a defendant make a 'credible threat' to the victim [and] [c]onduct intended to cause another reasonable fear of bodily injury does not naturally include the threatened use of physical force." 553 F.3d at 737–38. The Fourth Circuit disagreed, finding that conduct "purposefully carried out with the intended effect of placing a reasonably prudent person in fear of bodily harm . . . threatens [the] use of physical force against the person of another." That court further reasoned that such conduct "can only be characterized as purposeful, violent, and aggressive." *Id.* at 738.

However, other circuits have found that where it is possible to violate a stalking statute solely through harassing conduct or by making a threat that intentionally causes

---

[4]Repealed in 2008, now replaced by § 14.277.3A.

another to reasonably fear only non-physical harm, *i.e.*, emotional harm, a conviction under that statute is not categorically a violent felony. In *United States v. Insaulgarat*, 378 F.3d 456, 466 (5th Cir. 2004), the Fifth Circuit held that Florida's aggravated stalking statute, which proscribes a person subject to an injunction from "knowingly, willfully, maliciously, and repeatedly following or harassing the beneficiary of the injunction," is not a crime of violence. Florida's definition of harassment includes "'engaging in a course of conduct directed at a specific person that causes substantial emotional distress in such person . . . .'" *Id.* at 469 (quoting Fla. St. § 784.048(1)(a)). Because the infliction of emotional harm was sufficient to violate the statute, the Fifth Circuit determined the use or threatened use of physical force was not necessarily required, and thus the offense was not a violent crime. *Id.* at 470–71.

In *United States v. Jones*, 231 F.3d 508 (9th Cir. 2000), the Ninth Circuit considered California's stalking statute, which provides:

> Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking . . . .

Cal. Penal Code § 646.9(a).

Because the California Court of Appeals had construed the statute as encompassing more than just "physical" safety, the *Jones* court determined that it was possible to violate the statute in a way that did not constitute a crime of violence. 231 F.3d at 519–20.

The Eleventh Circuit also addressed this issue in *United States v. Esquivel-Arellano*, 208 F. App'x 758 (11th Cir. 2006). Under Georgia law, a person is guilty of aggravated stalking when:

> such person, in violation of [various bonds and orders], follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

Ga. Code § 16-5-91(a).

> The phrase "harassing and intimidating" is defined as:
>
> a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

Ga. Code § 16-5-90(a)(1).

After reviewing the Georgia cases applying the statute to specific circumstances, the Eleventh Circuit determined that the Georgia offense was broad enough to allow for conviction without the use, attempted use, or threatened use of physical force and therefore held it was not a crime of violence. *Esquivel-Arellano*, 208 F. App'x at 764–65.

### A.      The Use, Attempted Use, or Threatened Use of Physical Force Against the Person of Another under Kentucky's Statute

To be convicted of first-degree stalking in Kentucky, a defendant must make a threat with the intent to place the person stalked in reasonable fear of death, serious physical injury, or sexual contact. Thus, the statute requires a threat made with the actual intent to cause the person to fear an actual physical injury – either death, serious physical injury, or sexual contact. Negligent or reckless conduct is not enough. Further, similar to the North Carolina statute at issue in *Seay* and unlike the statutes at issue in *Insaulgarat*, *Jones*, and *Esquivel-Arellano,* Kentucky's statute does not encompass situations where fear of only emotional, psychological, or other non-physical harm is intended. In addition, the Kentucky statute, like its North Carolina counterpart, requires that the victim's fear  be reasonable.

Unlike the North Carolina statute, however, Kentucky's stalking statute allows for conviction based on a threat made with the intent to place someone in reasonable fear of sexual contact. The Kentucky Penal Code defines "sexual contact" as "any touching

of the sexual or other intimate parts of a person . . . for the purpose of gratifying the sexual desire of either party." Ky. Rev. Stat. § 510.010(7). The Kentucky Supreme Court has construed "sexual contact" as "not limited to the sex organ." *Bills v. Kentucky*, 851 S.W.2d 466, 471 (Ky. 1993). That court further explained that although sexual contact requires "[a]n actual touching," the touching "need not be directly with the body." *Id.* However, neither inadvertent nor accidental touching is sufficient. *Id.*

In *Johnson v. United States*, 130 S. Ct. 1265 (2010), the Supreme Court considered whether battery under Florida's statute qualified as a violent felony. Under Florida law, an individual could be convicted of battery for any intentional non-consensual touching, no matter how slight. The *Johnson* Court clarified that the physical force required to satisfy the force prong of the ACCA is "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 1271. Because the crime of battery did not require the use or threatened use of violent force, the Court held it was not categorically a violent felony. *Id.* at 1270, 1274.

Similarly, under Kentucky law the definition of sexual contact is broad enough to cover the slightest touch to a sexual or intimate part of another. Although a threat intended to place someone in reasonable fear of such contact may involve a threat to use force, it does not necessarily require a threat to use *violent* force.

Because a conviction under the sexual-contact provision does not necessarily require the threatened use of violent force, a violation of Kentucky's statute is not categorically a violent felony under the force prong of the ACCA.

**B.     Serious Potential Risk of Physical Injury to Another**

We next determine whether a conviction under the sexual-contact provision of Kentucky's first-degree stalking statute is a violent felony under the ACCA's residual clause.

In *United States v. Begay*, the Supreme Court held that regardless whether a crime poses a serious potential risk of physical injury to another, only crimes that are similar in kind and degree to the enumerated offenses of burglary, arson, and extortion,

in that they involve "purposeful, violent, and aggressive conduct," are violent felonies under the ACCA's residual clause.  553 U.S. 137, 144–45 (2008).  The *Begay* Court explained that purposeful, violent, and aggressive conduct is conduct that makes it "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 145.  Under this rationale, the *Begay* Court determined that driving under the influence was not such conduct and thus was not a violent felony.

The Supreme Court addressed this issue again in *Sykes v. United States* when it considered whether the crime of vehicle flight, part of Indiana's resisting-law-enforcement statute, is a violent felony under the ACCA's residual clause.  131 S. Ct. 2267 (2011).  The pertinent provision of Indiana's statute states:

> (a) A person who knowingly or intentionally:
>
> . . .
> (3) flees from a law enforcement officer after the officer has, by visible
> or audible means, identified himself and ordered the person to stop;
> commits resisting law enforcement . . . .

Ind. Code § 35-44-3-3(a)(3).  This offense is increased from a misdemeanor to a felony if "the person uses a vehicle to commit the offense."  Ind. Code § 35-44-3-3(b)(1)(A).

To determine whether the crime of vehicle flight presents a serious potential risk of physical injury to another, the *Sykes* Court used the standard set forth in *James v. United States,* 550 U.S. 192 (2007) –whether "the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses." *Sykes*, 131 S. Ct. at 2273 (quoting *James*, 550 U.S. at 203).  The Court noted that although the *Begay* Court used the "purposeful, violent, and aggressive standard" to evaluate a crime "akin to strict liability, negligence, or recklessness," the comparable risk standard was sufficient to analyze the crime of vehicle flight.  131 S. Ct. at 2276.  Nevertheless, the Court recognized that the two standards generally lead to the same result because "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation

and those that present serious potential risks of physical injury to others tend to be one and the same." *Id*. at 2275.

Utilizing the comparable risk standard, the *Sykes* Court deemed arson and burglary the most similar enumerated crimes to vehicle flight. In analogizing the crime of burglary to vehicle flight, the Court stated:

> Burglary is dangerous because it can end in confrontation leading to violence. . . . The same is true of vehicle flight, but to an even greater degree. The attempt to elude capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase. The felon's conduct gives the officer reason to believe that the defendant has something more than a serious traffic violation to hide.
>
> . . .
> Because an accepted way to restrain a driver who poses dangers to others is through seizure, officers pursuing fleeing drivers may deem themselves duty bound to escalate their response to ensure the felon is apprehended. . . . And once the pursued vehicle is stopped, it is sometimes necessary for officers to approach with guns drawn to effect arrest. Confrontation with police is the expected result of vehicle flight. It places property and persons at serious risk of injury.s

131 S. Ct. at 2273–74.

In *James*, the Supreme Court explained that "the most relevant common attribute of the enumerated offenses of burglary, arson, extortion, and explosives . . . is that all of these offenses, while not technically crimes against the person, nevertheless create significant risks of bodily injury or *confrontation that might result in bodily injury*." 550 U.S. at 199 (emphasis added). The Court further explained that in determining whether a crime poses a comparable risk of physical injury as an enumerated felony, it is not necessary that "every conceivable factual offense covered by a statute . . . present a serious potential risk of injury . . . ." *Id.* at 208. Rather, "[a]s long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the [ACCA's] residual provision." *Id.* at 209. The Court illustrated this principle in the context of extortion through discussion of a hypopthetical scheme involving an anonymous blackmailer who threatened to reveal embarassing personal information

about the victim unless he received regular payments. *Id.* at 208. According to the Court, despite the fact that the risk of physical injury to another in that particular situation was nonexistent, the crime of extortion could not be considered categorically non-violent. *Id.*

As with the enumerated offenses, when a defendant commits first-degree stalking the likelihood of injurious confrontation is high. A victim of first-degree stalking has been threatened with the intent to place the victim in reasonable fear of sexual contact, serious physical injury or death by an individual who has already intentionally alarmed, annoyed, harassed, or intimidated the victim on two or more occasions in such a severe manner that a reasonable person would suffer *substantial* mental distress as a result. In addition, the threat is made either while the stalker has a deadly weapon, after the victim has either obtained an order of protection or filed a criminal complaint against the stalker, or when the victim has previously been a victim of a felony or Class A misdemeanor committed by the stalker. Under these circumstances, placing someone in reasonable fear of death, serious physical injury or even the most innocuous sexual contact could elicit an intensified response that might result in violent confrontation.

The government's comparison of first-degree stalking to the enumerated crime of "extortion" is apt. Extortion is defined under the Model Penal Code as:

> purposely obtain[ing] property of another by threatening to:
> (1) inflict bodily injury on anyone or commit any other criminal offense; or
> (2) accuse anyone of a criminal offense; or
> (3) expose any secret tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute; or
> (4) take or withhold action as an official, or cause an official to take or withhold action; or
> (5) bring about or continue a strike, boycott or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act; or
> (6) testify or provide information or withhold testimony or information with respect to another's legal claim or defensel; or
> (7) inflict any other harm which would not benefit the actor.

Model Penal Code § 223.4.

First-degree stalking (of all three types) poses more risk of injury than many of the above-listed forms of extortion. To be guilty of extortion under the Model Penal Code definition, one only needs to obtain the victim's property and threaten the victim on one occasion with some type of harm, physical *or* non-physical. The victim in that instance knows that the extortioner is after property and that harm may be avoided by handing over that property. However, in the case of first-degree stalking, before any threat is ever made, the stalker has already accosted the victim with an intentional course of conduct severe enough to cause substantial mental distress. It is only after the stalker has engaged in this conduct that the stalker makes a threat with the intent to place that same victim in reasonable fear of a death, serious physical injury, or non-consensual touching of a sexual or intimate area of the body. Although a victim of extortion may feel able to ameliorate the situation by giving up the desired property, the first-degree stalking victim has no such recourse. Similarly, while an extortioner may leave the victim alone once obtaining possession of the desired object, the first-degree stalker has already demonstrated the intent to torment the victim continuously. If an injurious confrontation is likely to result from a threat to expose embarrassing information about someone for the purpose of obtaining property, it is even more likely in the case of a threat sufficient to create a reasonable fear of death, physical injury or sexual contact that is made by a stalker intent on instilling fear in the victim.

In sum, first-degree stalking under Kentucky law is the type of offense that by its nature poses a serious risk of physical injury to another. Even if one could imagine a hypothetical scenario of first-degree stalking where the risk of injury were not present, the combination of acts necessary for a conviction under Kentucky's first-degree stalking statute—1) intentionally and repeatedly performing acts that seriously alarm, annoy, intimidate, or harass another, serve no legitimate purpose, and would cause a reasonable person to suffer substantial mental distress; 2) threatening that same victim while intending to place the victim in reasonable fear of death, serious physical injury or sexual contact; and 3) committing the threats either with a deadly weapon or disregarding being the named party on an order of protection or criminal complaint filed by the victim, or having a previous conviction for conduct involving the victim —is not

only purposeful and violent conduct, but also conduct of escalating aggression that makes it more likely that the individual, if in possession of a gun, would use that gun deliberately to harm a victim. *See Begay*, 553 U.S. at 145. Based on the rationales in *James*, *Begay*, and *Sykes*, we hold that a violation of Kentucky's first-degree stalking statute is categorically a violent felony under the ACCA's residual clause.[5] We affirm.

---

[5]Accordingly, we need not consider the government's alternative argument that the district court plainly erred in concluding that Johnson's conviction of facilitation of aggravated robbery was not a violent felony under the ACCA.