**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0026n.06

No. 19-5231

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jan 16, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| LEVI WEST, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: GUY, SUTTON, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Levi West pleaded guilty to possession of a firearm by a convicted felon. The district court enhanced his sentence under the Armed Career Criminal Act ("ACCA"), which West challenges on several grounds. We affirm.

I.

When police officers in Clarksville, Tennessee, attempted to conduct a traffic stop of a vehicle driven by West, he drove away, parked the vehicle, fired several shots at pursuing officers, and fled on foot into a wooded area. The officers eventually found West hiding behind a tree, a pistol in the woods nearby, and "various military equipment items" in the vehicle, including body

armor.  West was charged with and pleaded guilty to being a felon in possession of a firearm and body armor in violation of 18 U.S.C. §§ 922(g)(1) and 931(a).

"The ACCA imposes a mandatory minimum sentence of fifteen years for a conviction under 18 U.S.C. § 922(g) if the defendant has three or more previous convictions for either 'violent felonies' or 'serious drug offenses' (or both)." *Greer v. United States*, 938 F.3d 766, 769 (6th Cir. 2019) (brackets omitted) (quoting 18 U.S.C. § 924(e)(1)).  The district court determined that West's prior convictions in Tennessee state court for robbery, aggravated burglary, and aggravated assault qualified as violent felonies, and sentenced West to 240 months of incarceration.  West timely appealed his status as a violent felon under the ACCA.

## II.

"We review de novo the issue of whether a prior conviction qualifies as a predicate offense under the ACCA."  *Vowell v. United States*, 938 F.3d 260, 263 (6th Cir. 2019).  The government has the burden to show that a defendant's prior convictions so qualify.  *United States v. Barbour*, 750 F.3d 535, 537 (6th Cir. 2014).

## III.

The district court determined that West's 2017 conviction for aggravated assault qualified as an ACCA predicate under the use-of-force clause.  Under that provision, a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" is a violent felony.  18 U.S.C. § 924(e)(2)(B)(i).  West argues that the state court documents regarding his conviction fail to show that he pleaded guilty to a specific type of aggravated assault under the Tennessee statute that qualifies as a violent felony under the ACCA.  We disagree.

A.

We use the "categorical approach" to determine whether a crime qualifies as a violent felony, "meaning that we look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *United States v. Ford*, 560 F.3d 420, 421–22 (6th Cir. 2009). Thus, "we must presume that the conviction rested upon nothing more than the least of the acts criminalized." *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (internal quotation marks and brackets omitted). "This approach avoids the practical difficulties and potential unfairness of permitting a sentencing court to relitigate facts and delve into the details of a prior conviction." *United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir. 2014) (citation, brackets, and internal quotation marks omitted).

Our task is a bit different if a statute is "divisible"—meaning it "sets out one or more elements of the offense in the alternative," *Descamps v. United States*, 570 U.S. 254, 257 (2013)— and because of that divisibility, "an individual can violate the statute in a way that constitutes a violent felony and in a way that does not," *United States v. Johnson*, 707 F.3d 655, 659 (6th Cir. 2013). In this situation, we must resort to the "modified categorical approach," in which a court "may 'consult a limited class of documents' to determine which alternative in a divisible statute gave rise to a conviction, and to compare that conviction to the offense under the ACCA." *Mitchell*, 743 F.3d at 1063 (quoting *Descamps*, 570 U.S. at 257). Where, as here, the defendant pleaded guilty to the offense, "we look to documents that identify what facts the defendant necessarily admitted by pleading guilty." *Id.* (citation and internal quotation marks omitted). These documents may include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

All agree that West was convicted of aggravated assault. Tennessee's aggravated assault statute provides:

A person commits aggravated assault who:

(A) Intentionally or knowingly commits an assault as defined in § 39-13-101, and the assault:

    (i) Results in serious bodily injury to another;

    (ii) Results in the death of another;

    (iii) Involved the use or display of a deadly weapon; or

    (iv) Involved strangulation or attempted strangulation; or

(B) Recklessly commits an assault as defined in § 39-13-101(a)(1), and the assault:

    (i) Results in serious bodily injury to another;

    (ii) Results in the death of another; or

    (iii) Involved the use or display of a deadly weapon.

Tenn. Code Ann. § 39-13-102(a)(1) (2015).

It also includes other variants. One applies to a person "who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual or individuals." § 39-13-102(c). A person may violate this subsection by "[i]ntentionally or knowingly caus[ing] physical contact with another" that is "extremely offensive or provocative." Tenn. Code Ann. § 39-13-101(a)(3) (2016). Another variant provides that "[a] person commits aggravated assault, who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect the child or adult from an aggravated assault . . . or aggravated child abuse." § 39-13-102(b). The government concedes that convictions under these two alternatives do not categorically qualify as ACCA predicates.

-4-

Thus, in addition to being a divisible statute, § 39-13-102 also can be violated "in a way that constitutes a violent felony and in a way that does not," *Johnson*, 707 F.3d at 659, and therefore the modified categorical approach applies.

B.

The indictment charged West and two codefendants with "unlawfully, feloniously and knowingly caus[ing] bodily injury . . . which resulted in . . . death." By including the intent and resulting-death details, the indictment appears to have charged West with aggravated assault under § 39-13-102(a)(1)(A)(ii). West pleaded guilty pursuant to a plea agreement, however, to a different charge.

Tennessee Rule of Criminal Procedure 11 states that, pursuant to a plea agreement, a defendant may plead guilty to a charged offense, a "lesser" offense, or a "related offense" that need not appear in the indictment. *See Dillard v. United States*, 768 F. App'x 480, 488 (6th Cir. 2019) (discussing the rule). West's judgment states that the conviction was for "AGG ASSAULT" (without a statutory specification) and a Class C felony. This tells us that he did not plead down to simple assault or some other, different offense, and rules out several variants of aggravated assault under § 39-13-102, as only subsections (a)(1)(A)(i)–(iv), (b), and (c) are Class C felonies. *See* § 39-13-102(e)(1)(A)(ii)–(iv); *see also United States v. Cooper*, 739 F.3d 873, 881–82 (6th Cir. 2014). And the plea petition makes clear that West did not plead guilty to the charge in the indictment, as it lists "Aggravated Assault resulting in death (C-Fel)" as the charged offense and "Aggravated Assault (C-Fel)" as the offense to which West pleaded guilty.

Relying on the indictment's "cause[d] bodily injury" language, the government argues West pleaded guilty to aggravated assault resulting in serious bodily injury under § 39-13-102(a)(1)(A)(i), which would constitute a violent felony under the ACCA. But this carries little

weight.  Where a defendant pleaded guilty to a different crime than that alleged in the indictment, we cannot "favor the originally charged offense over the offense to which [the defendant] eventually pleaded."  *United States v. Benton*, 639 F.3d 723, 730–31 (6th Cir. 2011); *see also United States v. Bernal-Aveja*, 414 F.3d 625, 628 (6th Cir. 2005) ("Because Bernal-Aveja did not plead guilty to, and therefore was not actually convicted of, the aggravated burglary charge contained in the indictment, the indictment alone is insufficient to meet the government's burden of proving that Bernal-Aveja was previously convicted of a 'crime of violence.'").  "Admission of facts from a guilty plea is limited to elements of the crime charged or those explicitly admitted to by the defendant," *United States v. Louchart*, 680 F.3d 635, 637 (6th Cir. 2012), and by examining the indictment here, "it is impossible to discern which facts [West] necessarily admitted when he pleaded guilty," *United States v. Martinez-Ortega*, 482 F. App'x 96, 101 (6th Cir. 2012).  So it is not appropriate to consider the indictment.[1]

We instead focus on the plea colloquy transcript.  In it, the prosecutor provided the following factual basis for West's guilty plea:

> Had this gone to trial, Judge, the State would have introduced proof that on or about the 13th of January of 2016 the defendants in this matter had a disagreement with a Daniel Colby, another inmate with the Hardeman County Correctional Facility, that being situated here in Hardeman County, Tennessee.  As a result of that alterca – physical altercation occurred amongst all three co-defendants and Mr. Colby, on or about the 25th of January of 2016, Mr. Colby was airlifted from the Hardeman County Correctional Facility to the Regional Medical Center in Memphis and subsequently died.  The source of the death was a blunt force trauma that had been tied to a date corresponding with the assault.

---

[1]And even if we were to consider the indictment, it alleges "bodily injury," not "serious bodily injury."  This distinction matters because each of the aggravated assault variants listed under § 39-13-102(a)(1)(A) requires proof of simple assault under § 39-13-101, and one way to commit simple assault is to "[i]ntentionally, knowingly or recklessly cause[ ] bodily injury to another." § 39-13-101(a)(1); *see* § 39-13-102(a)(1)(A).  It is thus more likely that the indictment included the phrase "bodily injury" to properly plead an additional element of aggravated assault resulting in death, not to imprecisely invoke aggravated assault resulting in serious bodily injury.

West agreed that those were the facts supporting his guilty plea. The prosecutor also explained that the medical examiner "determined that had the [victim] received proper medical attention at the time that he had requested, chances were good that he would not have died." For that reason, "the State has amended to go from agg assault resulting in death to an aggravated assault and that's the plea that we're here on today[.]" Later, the trial court stated that "[i]t is my understanding, Mr. West, you are pleading guilty to a lesser charge of aggravated assault . . . . Is that correct?" West answered in the affirmative.

West says this does not establish which aggravated assault variant he pleaded guilty to. The prosecutor never identified the statutory provision for the offense or its elements (neither did the trial court), and instead merely described the factual basis for the plea, without going into much detail. West contends that, by agreeing to that factual basis, he did not necessarily admit to the elements of any specific variant of aggravated assault. Instead, he claims he "assented to a factual basis saying there was a physical altercation that involved at least some of the codefendants" and "that the victim suffered blunt force trauma," but he did not admit that he committed "any particular act." That is, "he necessarily admitted solely that such things happened and that he had committed 'an aggravated assault' in general." This leaves open the possibility, according to West, that the victim had a restraining order against West, that West touched the victim in an extremely offensive manner, and that West's codefendants are possibly responsible for the victim's injuries.

To be sure, the prosecutor's factual-basis recitation left much to be desired. It did not specify which of the three codefendants committed what acts, what mental state any of them acted with, or even whether any of them caused the victim's injuries. The problem for West is that the mere possibility that he pleaded guilty to an offensive-touching aggravated assault under § 39-13-102(c) does not help him. The government had the burden to prove by a preponderance of the

evidence that West was previously convicted of a violent felony. *Bernal-Aveja*, 414 F.3d at 627; *see United States v. Ossana*, 679 F.3d 733, 736 (8th Cir. 2012). And taken together, the *Shepard* documents provide enough evidence to satisfy its burden that West pleaded guilty to an aggravated assault offense that was a Class C felony and was not the "resulting in death" variant. Namely, West admitted during the plea colloquy that a "physical altercation occurred amongst all three co-defendants and Mr. Colby," Colby "subsequently died," and the "source of the death was a blunt force trauma that had been tied to a date corresponding with the assault." West thus admitted that Colby suffered "serious bodily injury"—an element of § 39-13-102(a)(1)(A)(i). Tennessee's criminal code defines "serious bodily injury" as "bodily injury that involves," among other alternatives, "[a] substantial risk of death." Tenn. Code Ann. § 39-11-106(a)(34) (2014). This includes situations in which the risk is so great that the victim actually dies, even based partly on a delay in receiving medical care. *See State v. Farmer*, 380 S.W.3d 96, 103 & n.4 (Tenn. 2012) ("The State failed to present sufficient proof that the victim suffered a serious bodily injury" and provided "no evidence in the present case that Westbrooks would have been at substantial risk of death even had he received no medical treatment.")

This finding is not, as West argues, the sort of "non-elemental fact" the Supreme Court has prohibited reliance on in modified-categorical-approach cases. *Mathis v. United States*, 136 S. Ct. 2243, 2255 (2016) (quoting *Descamps*, 570 U.S. at 270). Such facts are "by definition . . . not necessary to support a conviction." *Descamps*, 570 U.S. at 266 n.3 (emphasis omitted). But here, showing that the victim suffered "serious bodily harm" *is* necessary to support a conviction under § 39-13-102(a)(1)(A)(i). And it comes from a source that "falls squarely within the materials approved by *Shepard*, namely . . . a statement of the 'factual basis for the plea.'" *United States v. Patterson*, 878 F.3d 215, 219 (6th Cir. 2017) (quoting *Shepard*, 544 U.S. at 26).

Beyond that, the government points out that the plea colloquy transcript includes "no reference whatsoever to either a parent-child relationship or the existence of a restraining order between West and the victim, which are necessary elements under the (b) and (c) variants, respectively." And Tennessee Rule of Criminal Procedure 11 requires that a court "determine that there is a factual basis for [a guilty] plea" before accepting it. Tenn. R. Crim. P. 11(b)(3). This further supports the conclusion that West pleaded guilty to the "substantial bodily harm" variant of aggravated assault. *See United States v. McCants*, 920 F.3d 169, 180 (3d Cir. 2019) ("McCants points to nothing in the colloquy permitting even the inference that he pleaded guilty under subsection (a)(3). Had McCants pleaded guilty to subsection (a)(3), he would have needed to admit that he committed or threatened to commit another crime. Yet his plea colloquy makes reference to neither."), *vacated on other grounds*, No. 19-5456, 2019 WL 5150464 (U.S. Oct. 15, 2019). When using the modified categorical approach, courts may draw some "inferences from the[ ] prototypical *Shepard* documents." *Patterson*, 878 F.3d at 219; *see Ossana*, 679 F.3d at 737. "The court is not required either to wear blinders or to leave common sense out of the equation." *United States v. Miller*, 478 F.3d 48, 52 (1st Cir. 2007); *see United States v. Reyes-Contreras*, 910 F.3d 169, 178 (5th Cir. 2018) (en banc) ("Nothing in *Shepard* or *Taylor* requires us to act as robots and to ignore the necessary implications from the formal documents in the file of a judgment of conviction."). West's admission to facts that satisfy an element of one aggravated assault variant, and his lack of admission to any elements of the others, supports an inference that West pleaded guilty to that variant.

In sum, the *Shepard* documents establish by a preponderance of the evidence that West was convicted of aggravated assault resulting in serious bodily injury, which is a violent felony under the ACCA. The district court did not err in so ruling.

IV.

West challenges his sentence's ACCA enhancement on two other grounds, but both are foreclosed by precedent.

A.

West argues that his previous conviction for aggravated burglary under Tennessee law does not qualify as an ACCA predicate because it criminalizes a broader swath of conduct than the enumerated offense of "generic" burglary. *See* 18 U.S.C. § 924(e)(2)(B)(ii). Under the enumerated-offense clause, a defendant's "prior convictions qualify as ACCA predicates 'only if the statute's elements are the same as, or narrower than, those of the generic offense.'" *Greer*, 938 F.3d at 771 (quoting *Descamps*, 570 U.S. at 257). West contends that the statute of his aggravated burglary conviction (Tennessee Code Annotated § 39-14-403) is overbroad because it encompasses attempted burglary in addition to completed burglary.

Our decisions in *United States v. Priddy*, 808 F.3d 676, 685 (6th Cir. 2015), and *United States v. Nance*, 481 F.3d 882, 887 (6th Cir. 2007), foreclose this argument. Although we abrogated both cases' holdings in *United States v. Stitt*, 860 F.3d 854, 856 (6th Cir. 2017) (en banc), the Supreme Court reversed that decision of our en banc court, *United States v. Stitt*, 139 S. Ct. 399, 408 (2018). This means, as we recently observed, that *Nance* and *Priddy* are once again binding Sixth Circuit precedent, *Brumbach v. United States*, 929 F.3d 791, 794 (6th Cir. 2019), *petition for cert. filed*, No. 19-6968 (U.S. Dec 13, 2019), and therefore, "the Tennessee aggravated burglary statute is a generic version of the crime of burglary[ ] [and] constitutes a violent felony under the ACCA's enumerated-offense clause," *Priddy*, 808 F.3d at 684.

B.

Finally, West claims that the government failed to prove that his robbery and aggravated burglary offenses were committed on different occasions as required by the ACCA. 18 U.S.C. § 924(e)(1).

> [T]wo offenses are committed on different occasions under the Act if: (1) it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins; (2) it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense; or (3) the offenses are committed in different residences or business locations.

*United States v. Paige*, 634 F.3d 871, 873 (6th Cir. 2011) (citation and internal quotation marks omitted). Here, the judgment in West's aggravated burglary conviction lists an offense date of September 29, 2011, while the judgment in his robbery conviction lists an offense date of June 24, 2012. The indictments indicate that each crime took place at a residence belonging to a different person.[2] These facts suffice to show that West committed the two offenses "on occasions different from one another."

West further contends that the district court, in considering this issue, should have been restricted "to using only the evidentiary sources approved in *Taylor . . .* and *Shepard*," *United States v. King*, 853 F.3d 267, 269 (6th Cir. 2017), and to only considering the elemental facts from those sources. According to West, "the *Shepard*-approved evidence does not establish that he necessarily admitted that he committed the [offenses] on occasions different from one another." *United States v. Hennessee* forecloses this argument. 932 F.3d 437, 444 (6th Cir. 2019) ("[A] district court may consider both elemental and non-elemental facts contained in *Shepard*-approved documents to determine whether prior felonies were committed on occasions different

---

[2]Because West pleaded guilty to the exact same offenses alleged in the indictments for both crimes, it is appropriate to consider the indictments here.

from one another for purposes of the ACCA."), *cert. denied*, No. 19-5924, 2020 WL 129676 (U.S. Jan. 13, 2020).

V.

For the reasons discussed above, we affirm the district court's judgment.