[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12037
Non-Argument Calendar

_____

D.C. Docket No. 3:14-cr-00174-HLA-MCR-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN WATKINS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 12, 2017)

Before TJOFLAT, WILLIAM PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

John Watkins, Jr. appeals his conviction and 240-month sentence for

conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A), and 846.  After careful review, we affirm.

I.

A.

In October 2014 Watkins was charged with one count of conspiracy "to distribute methamphetamine, . . . the amount of pure/actual methamphetamine being fifty (50) grams or more." Watkins pled not guilty and proceeded to trial.

At trial the government's first witness was Archie Crook. Crook testified that in August 2013 he agreed to sell methamphetamine for Watkins and moved in with him. A few weeks later he began accompanying Watkins to Georgia to get methamphetamine from Watkins's source, Billy Ray Simmons. On their second trip, they bought around half an ounce of methamphetamine and began selling it.

Crook sold methamphetamine by the gram. Each gram was made up of 80 percent "ice"—the "pure form of methamphetamine"—and 20 percent "cut." Crook and Watkins kept the two-tenths "save[d] . . . off of each gram" for their personal use. Crook testified that Watkins participated in preparing the methamphetamine to sell and that sometimes customers came to Watkins's house to buy it. It took only one or two days to sell the half ounce.

Over the next five months, Crook went with Watkins to get methamphetamine from Simmons at least once a week. On most of these trips he and Watkins would get one or two ounces of methamphetamine and distribute it.

2

Crook estimated that he and Watkins had gotten around twenty ounces of methamphetamine from Simmons over the course of five months.

Next, Hollie Griffis, who lived with Watkins, testified she also accompanied Watkins on his trips to get methamphetamine from Simmons. Although on most of these trips, Watkins bought about "a golf ball" size of methamphetamine, on at least one trip he bought a "big old ball," about the size of "a softball." Griffis confirmed that Watkins was involved in preparing the methamphetamine to sell. She estimated that he distributed or conspired to distribute a lot of methamphetamine, "way over 200" grams.

Deputy Sheriff James Crews testified that in May 2014 he stopped a vehicle belonging to Kevin Moore because he was driving with a suspended license. After Moore was taken into custody, Deputy Sheriff Crews conducted a search of the vehicle and found a prescription pill bottle wrapped in electrical tape, inside of which he saw "three to four small plastic bags containing a crystal-like substance." He suspected the substance was methamphetamine and took the bags into evidence. The bags were sent to a Georgia Bureau of Investigation crime lab to be tested. An expert witness from the lab testified at trial that he conducted a purity analysis on the substance. He testified that it was methamphetamine, that it was 82.1 percent pure, plus or minus 6.3 percent, and that the bags in total weighed 3.16 grams.

3

Kevin Moore also testified.  He said that, over the course of four to five weeks, he got either "8-balls"[1] or quarter ounces of methamphetamine from Watkins every other day.  Moore described the quality of the methamphetamine he got from Watkins as "good."  He confirmed that the methamphetamine seized from him by Deputy Sherriff Crews was methamphetamine he had received from Watkins and was of the same quality he had gotten in the past.  He agreed that Watkins's methamphetamine was "a pretty consistent quality."

B.

The court instructed the jury that Watkins was charged with "conspiring to distribute 50 grams or more of methamphetamine."  To convict Watkins, one of the elements the government had to prove was that "the object of the unlawful plan was to distribute 50 grams or more of pure, slash, actual methamphetamine."  However, he could be found guilty "even if the amount of the controlled substance for which he should be held responsible [was] less than 50 grams."  These instructions are nearly identical to those proposed by Watkins.[2]  Similarly, the verdict form used by the jury stated Watkins was charged with "conspiracy to

---

[1] According to Crook, an 8-ball is a little over 3.5 grams or an eighth of an ounce.

[2] Watkins's proposed instruction detailing the offense and its elements stated (1) Watkins was "charged with conspiring to distribute at least 50 grams of methamphetamine," (2) one of the elements the government had to prove was that "the object of the unlawful plan was to distribute 50 grams or more of pure/actual methamphetamine," and (3) Watkins could be found guilty "even if the amount of the controlled substance for which he should be held responsible [was] less than 50 grams."

4

distribute methamphetamine," and required the jury to determine the amount of methamphetamine involved.

The district court asked the parties whether they had any objections to the jury instructions, the verdict form, or the manner in which they were given or read. Both parties confirmed they had no objections. The jury found Watkins guilty of conspiracy to distribute fifty grams or more of methamphetamine.

## II.

We ordinarily review <u>de novo</u> a constitutional issue, such as a claim that the indictment was constructively amended. <u>United States v. Holt</u>, 777 F.3d 1234, 1261 (11th Cir. 2015). We also review <u>de novo</u> a conviction for sufficiency of the evidence, viewing the evidence in the light most favorable to the government. <u>United States v. Hunerlach</u>, 197 F.3d 1059, 1068 (11th Cir. 1999). However, claims raised for the first time on appeal are reviewed for plain error. <u>Holt</u>, 777 F.3d at 1261. Under the plain-error standard, federal appellate courts "may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir. 2005). An error affects substantial rights if there is a reasonable probability that, but for the error, the outcome of the proceeding would have been different. <u>Id.</u> at 1299. But "even plain error review is unavailable in cases where a criminal defendant 'invites' the constitutional error of

5

which he complains." United States v. Jernigan, 341 F.3d 1273, 1289 (11th Cir. 2003).

III.

Watkins argues he is entitled to relief from his conviction and sentence because the government failed to prove that his offense involved fifty grams or more of actual/pure methamphetamine. First, he argues the language of 21 U.S.C. § 841(b)(1)(A) requires his conviction to have been for methamphetamine that is pure and not a mixture. However, as he acknowledges, this argument is foreclosed by our precedent. See United States v. Frazier, 28 F.3d 99, 101 (11th Cir. 1994) (per curiam) (holding that under § 841(b)(1)(A), "100 grams of methamphetamine . . . refers to 100 grams of the drug however it is found").

Second, Watkins argues the indictment was constructively amended by the jury instructions and verdict form as the former referred to "pure/actual methamphetamine" and the latter only to "methamphetamine." The invited-error doctrine precludes our review of this argument. See United States v. Silvestri, 409 F.3d 1311, 1337 (11th Cir. 2005) (holding invited-error doctrine precluded review of challenge to jury instructions where attorney "expressly accepted the language of the jury instructions"). Here, every portion of the final jury instructions about which Watkins complains was proposed by Watkins himself, and the verdict form

6

simply mirrored the language of his proposed jury instructions.  He thus invited

any claimed error in the jury instructions and verdict form.[3]  See id.

Third, Watkins's challenge to the sufficiency of the evidence fails.  Even if

the government was required to prove that the conspiracy involved more than fifty

grams of pure/actual methamphetamine, there was ample evidence of that here.

For example, Crook testified that he and Watkins had gotten around twenty

ounces, or 560 grams, of pure/actual methamphetamine—"ice"—from Simmons

over the course of five months, and that he sold it by the gram at 80 percent purity.

Thus there was evidence to support a finding that the conspiracy involved at least

448 grams of pure/actual methamphetamine.  This finding was also corroborated

by the testing of the methamphetamine seized from Moore, which established a

purity of 82.1 percent, plus or minus 6.3 percent, and Moore's testimony that

Watkins's methamphetamine was of "pretty consistent quality."

## IV.

Watkins next argues that the district court abused its discretion by admitting

evidence of his 2004, 2007, and 2010 Florida drug convictions.  He alleges the

---

[3] Even if there was no invited error with respect to the verdict form, Watkins has not explained how it constructively amended the indictment or how, if such amendment did occur, it would satisfy the plain-error standard and merit reversal.  We note that "[a] constructive amendment to the indictment occurs where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment," United States v. Starke, 62 F.3d 1374, 1380 (11th Cir. 1995) (emphasis added and quotation omitted), and that drug amount and type are not elements of a § 841(a)(1) offense and are only charged for purposes of the enhanced penalty under § 841(b), United States v. Sanders, 668 F.3d 1298, 1309–11 (11th Cir. 2012) (per curiam).

7

convictions were inadmissible under Federal Rules of Evidence 403 and 404(b).

He also contends the court did not conduct the required analysis with respect to the

2004 conviction.

A district court abuses its discretion when its decision "rests upon a clearly

erroneous finding of fact, an errant conclusion of law, or an improper application

of law to fact." United States v. Westry, 524 F.3d 1198, 1214 (11th Cir. 2008) (per

curiam) (quotation omitted). Even an erroneous evidentiary ruling will stand if it

was harmless. United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000). An

error is harmless if the other evidence of guilt was substantial and the defendant's

rights were not affected. Id.

We need not determine whether the district court abused its discretion in

admitting evidence of Watkins's prior convictions because, even if this was error,

it would have been harmless error. The government presented several witnesses,

including Crook, Griffis, and Moore, who testified that Watkins sold

methamphetamine. Crook and Griffis testified Watkins frequently bought

methamphetamine in large quantities from Simmons. Crook also testified he had

agreed to sell methamphetamine for Watkins, that he and Watkins together

prepared methamphetamine to sell, and that customers would come to Watkins's

house to purchase it. Moore testified he bought 8-balls or quarter-ounce amounts

of methamphetamine from Watkins every other day. Even without the challenged

evidence, the other evidence of Watkins's guilt was overwhelming and his rights were not affected.  See id.

## V.

Watkins also argues that the district court improperly enhanced his sentence pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851 because his prior drug convictions under Fla. Stat. § 893.13 do not qualify as "felony drug offense[s]" under 21 U.S.C. § 802(44).[4]  An offense involving "50 grams or more of methamphetamine" has a mandatory minimum sentence of ten years.  21 U.S.C. § 841(b)(1)(A)(viii). But the mandatory minimum is increased to twenty years if the defendant has a prior conviction for a "felony drug offense."  Id.  A "felony drug offense" is one "that is punishable by imprisonment for more than one year under any law . . . of a State . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."  21 U.S.C. § 802(44).

Before trial the government notified Watkins and the district court it intended to seek this sentencing enhancement based on one of Watkins's "prior drug felony convictions" in 2004, 2007, and 2010.  At sentencing, Watkins did not

---

[4] Watkins also contends the Fifth and Sixth Amendments to the United States Constitution require his prior convictions to be charged in the indictment and proven beyond a reasonable doubt to the jury in order for them to serve as a basis for a sentence enhancement.  He acknowledges, correctly, that this argument too is foreclosed by Supreme Court and circuit precedent.  See Almendarez-Torres v. United States, 523 U.S. 224, 247, 118 S. Ct. 1219, 1233 (1998) (rejecting argument that the Constitution requires "recidivism [to] be treated as an element of [an] offense); United States v. Gibson, 434 F.3d 1234, 1246 (11th Cir. 2006) (same).

deny or object to the three convictions, and the court imposed the mandatory minimum.

Because Watkins did not raise any objections at sentencing, on appeal we review his challenge to this enhancement for plain error.[5] See Hunerlach, 197 F.3d at 1068.  Because Watkins has failed to identify any decision of this Court or the Supreme Court holding, as he argues, that a conviction under Fla. Stat. § 893.13 cannot qualify as a "felony drug offense" under 21 U.S.C. § 802(44), there is no plain error.  See United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam) ("It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.").

## VI.

Finally, Watkins argues that the district court improperly applied the career-offender enhancement to his sentence pursuant to United States Sentencing Guidelines ("USSG") § 4B1.1.  The presentence investigation report ("PSR") determined Watkins was a career offender under USSG § 4B1.1(a) because he had two earlier felony convictions for either a crime of violence or controlled substance

---

[5] The government asserts Watkins's sentencing challenges are precluded from review by the invited-error doctrine.  We have found defendants invited error as to sentencing when there has been repeated, express advocacy for a particular sentence that indicates strategic decision-making.  See, e.g., United States v. Carpenter, 803 F.3d 1224, 1236–37 (11th Cir. 2015); United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006).  This is not the case here.

offense.  Specifically, it identified his 2002 Florida manslaughter conviction as a crime of violence and his 2010 Florida conviction for sale, manufacture, and delivery with intent to sell a controlled substance as a controlled substance offense under USSG § 4B1.2.  Watkins did not file any objections to the PSR.  At sentencing, the district court noted the PSR's designation of Watkins as a career offender and asked whether Watkins had any objections to the qualifying prior convictions.  Watkins said he did not.

On appeal, Watkins contends his prior convictions under the Florida manslaughter statute, Fla. Stat. § 782.07, and the Florida drug statute, Fla. Stat. § 893.13, do not qualify as a "crime of violence" or a "controlled substance offense," respectively, under USSG § 4B1.2.  Because Watkins did not object to his designation as a career offender, we review his claim for plain error.  See Hunerlach, 197 F.3d at 1068.  Here, there is none.  A Florida manslaughter conviction qualifies as a crime of violence under USSG § 4B1.2(a).  In re Burgest, 829 F.3d 1285, 1287 (11th Cir. 2016) (per curiam).  And a conviction under Fla. Stat. § 893.13(1) is a controlled substance offense under USSG § 4B1.2(b).  United States v. Smith, 775 F.3d 1262, 1268 (11th Cir. 2014).

**AFFIRMED.**

11